**Federal Defenders**
OF NEW YORK, INC.

One Pierrepont Plaza-16th Floor, Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

David E. Patton
*Executive Director and
Attorney-in-Chief*

Deirdre D. von Dornum
*Attorney-in-Charge*

December 16, 2016

**Via Hand & Email**
Frank M. Marcigliano
Senior United States Probation Officer
Eastern District of New York
147 Pierrepont Street
Brooklyn, New York 11201

      **Re:**    **United States v. Tyrek Townsend, 15-CR-653 (DLI)**

Dear Officer Marcigliano:

      I write to object to the Department of Probation's guidelines calculation as set forth in the Presentence Investigation Report (PSR). Specifically, Mr. Townsend objects Paragraph 13, calculating a base offense level of 24 pursuant to U.S.S.G. §2K2.1(a)(2).¶ 13. Mr. Townsend's correct base offense level is 14. Mr. Townsend's December 15, 2004 conviction under New York Penal Law 220.31 does not qualify as a "controlled substance offense" under USSG § 2K2.1. Additionally, based on the information present before the Court Mr. Townsend's September 12, 2011 conviction for Aggravated Assault does not necessarily qualify as a crime of violence.

    **I.**      **Mr. Townsend's Prior Conviction Under NY Penal Law 220.31 Does Not Qualify as a "Controlled Substance Offense" Under USSG § 2K2.1**

      The PSR concludes that Mr. Townsend's base offense level is 24 because he has two convictions, one of which is for a controlled substance (criminal sale of a controlled substance in the fifth degree, in violation of N.Y. Penal Law § 220.31). See PSR ¶ 13. The

1

PSR is mistaken. Mr. Townsend's conviction for criminal sale of a controlled substance in the fifth degree does not qualify as a "controlled substance offense" because, at the time of Mr. Townsend's conviction, New York's schedule of controlled substances was categorically broader than the federal schedule.

Under USSG §2K2.1, a "controlled substance offense" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the ... distribution, or dispensing of a controlled substance." § 4B1.2 (b) & cmt. n.1. To determine whether a state conviction meets the Guidelines definition, this Circuit employs the categorical and modified categorical approaches.  United States v. Savage, 542 F.3d 959, 964 (2d Cir. 2008) (where government failed to show that a defendant's guilty plea necessarily rested on facts identifying a conviction as a controlled substance offense). Here, because N.Y. Penal Law § 220.31 is indivisible, as there is only one way to violate it by selling a "controlled substance," the categorical approach applies. See, e.g., Mellouli v. Lynch, 135 S. Ct. 1980 at 1983, 1986 (2015) n.4 (Kansas statute criminalizing "possession of drug paraphernalia to "store, contain, conceal, inject, ingest, inhale or otherwise introduce a controlled substance into the human body" treated as indivisible with respect to the type of controlled substance).

Under the categorical approach, this Court considers "whether the statute of the prior conviction criminalizes conduct that falls exclusively within the federal definition of a predicate offense."  Savage, 542 F.3d  at 964.  As the Supreme Court recently reaffirmed, under the categorical approach, "[s]entencing courts may 'look only to the statutory definitions' -- i.e., the elements -- of a defendant's prior offenses, and not 'to the particular facts underlying those convictions.'" Descamps v. United States, 133 S. Ct. 2276, 2283 (2013) (quoting Taylor v. United States, 495 U.S. 575, 600 (1990)).  If the statute defining a defendant's prior offense "has the same elements as the 'generic' ... crime, then the prior conviction can serve as [a] ... predicate; so too if the statute defines the crime more narrowly .... But if the statute sweeps more broadly than the generic crime, a conviction under that law cannot count as [a] ... predicate, even if the defendant actually committed the offense in its generic form." Descamps, 133 S. Ct. at 2283.  Under the categorical approach, a defendant's "actual conduct is irrelevant to the inquiry."  Mellouli v. Lynch, 135 S. Ct. 1980, 1986 (2015).

Applying those principles, Mr. Townsend's prior New York conviction does not count as a "controlled substance offense" as defined by § 4B1.2(b).  At the time of Mr. Townsend's conviction (in 2004), New York's controlled substance schedule was categorically broader than the federal schedule.  The term "controlled substance" under § 4B1.2(b) refers to substances controlled by federal law.  See, United States v. Sanchez-Garcia, 642 F.3d 658, 661 (8th Cir. 2011); United States v. Leiva–Deras, 359 F.3d 183, 189

(2d Cir.2004); United States v. Kelly, 991 F.2d 1308, 1316 (7th Cir.1993); Ruiz–Vidal v. Gonzales, 473 F.3d 1072, 1078 (9th Cir. 2007)  A "controlled substance" under New York law is "any substance listed in schedule I, II, III, IV, or V of section thirty-three hundred six of the public health law."  N.Y. Penal Law § 220.00(5).  In 2004, New York's schedule included at least one substance (human chorionic gonadotropin, or HCG) not scheduled federally.  Compare N.Y. Pub. Health Law § 3306, Schedule III(g) (2004) (listing "Chorionic gonadotrophin") with 21 U.S.C. §§ 802(6) and 812 (2004) (federal schedule, not listing that substance).  Decisions of several immigration judges have recognized this categorical mismatch.  See, e.g., In re Sicari, (N.Y. Imm. Ct. June 25, 2015) (slip op., at 3-4) (Morace, I.J.); In re Nunez (N.Y. Imm. Ct. Sept. 20, 2013) (slip op., at 2-3) (Segal, I.J.), both attached as Exhibit A.

In short, the New York controlled schedule is categorically broader than the federal schedule and § 220.31 does not qualify as "controlled substance offense" for purposes of § 4B1.2(b) and Mr. Townsend is not subject to a base level offense adjustment because of such a conviction. Note the Honorable Katherine Polk Failla recently ruled on this same statute and found the same conclusion with respect to N.Y. Penal Law § 220.31. See United States v. Smith, 14 CR 813, S.D.N.Y., (KPF) (the career offender enhancement did not apply to a defendant with two prior convictions under § 220.31).[1] See Oral Ruling Tr. Pp 52-54 Attached as Exhibit B.

## II.    Mr. Townsend's prior New Jersey Assault Conviction Does Not Constitute a Crime of Violence

The PSR relies on Mr. Townsend's New Jersey conviction for Aggravated Assault as one of two qualifying convictions to establish a base level of 24. .[2] See PSR ¶ 13 and 27. The PSR does not cite to the specific subsection for which Mr. Townsend was convicted. As such, the Department of Probation has failed to meet its burden to conclude that Mr. Townsend was convicted of a "crime of violence" within the meaning of USSG 2K2.1.

Generally, a sentencing court must limit itself "to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit

---

[1] Counsel notes for the Court that this same issue appears to have made its way up to the Circuit in an immigration case, Harbin v. Lynch, 2d Cir. No. 14-143-AG, which was argued on December 13, 2016.

[2] Defense Counsel has requested disposition paperwork from Department of Probation and filed a motion to compel Mr. Townsend's criminal history documents. At this time, it is unknown which exact subsection of N.J.S.A. § 2C Mr. Townsend was convicted, and the burden rests on the government & Department of Probation to substantiate its request for enhancement. See Shepard v. United States, 125 S. Ct. 1254 (2004).

factual finding by the trial judge to which the defendant assented." <u>United States</u> v. <u>Reyes</u>, 691 F. 3d 453 (2012) citing <u>Shepard</u> v. <u>United States</u>, 544 U.S. 13, 16, 125 S. Ct. 1254, 161 L.Ed.2d 205 (2005); <u>See</u> <u>Johnson</u>, 130 S. Ct. at 1273. In this circuit, a sentencing court may not rely on a PSR's description of a defendant's pre-arrest conduct that resulted in a prior conviction to determine that the prior offense constitutes a "crime of violence." <u>See</u> <u>Reyes</u>, 691 F. 3d 453 (2012). Here, the Department of Probation concludes that Mr. Townsend's conviction for Aggravated Assault is a crime of violence without providing the necessary verification. Mr. Townsend objects to this conclusion.

\* \* \*

For these reasons, Mr. Townsend objects to the calculation of the Sentencing Guidelines in the PSR.

Respectfully submitted,

_____/s/_____

Michael L. Brown, II
Assistant Federal Defender
(718) 407-7408
michael_l_brown@fd.org

cc:
Hon. Chief Judge Dora L. Irizarry (by hand 2 Courtesy Copies)
AUSA David Kessler (by hand and email)
Tyrek Townsend (by US Mail)

Enclosure: Exhibit A & B

*Exhibit A*

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
UNITED STATES IMMIGRATION COURT
26 FEDERAL PLAZA
NEW YORK, NEW YORK

File No.: A-018-032-055

| | |
|---|---|
| In the Matter of: ) | |
| ) | |
| **SICARI, Giuseppe** ) | **IN REMOVAL PROCEEDINGS** |
| ) | |
| Respondent ) | |

CHARGE:            INA § 237(a)(2)(B)(i)        Controlled Substance Offense

APPLICATIONS:                    Motion to Terminate with Prejudice

ON BEHALF OF RESPONDENT:                ON BEHALF OF DHS:

Olivia Cassin, Esq.                    Henry Katz, Esq.
The Legal Aid Society                    Assistant Chief Counsel
Immigration Law Unit                    26 Federal Plaza, Room 1130
199 Water Street, 3rd Floor                New York, New York 10278
New York, NY 10038

## DECISION AND ORDERS OF THE IMMIGRATION JUDGE

**I.    PROCEDURAL HISTORY**

Giuseppe Sicari ("Respondent") is a native and citizen of Italy. He entered the United States ("U.S.") on June 21, 1968, as a lawful permanent resident ("LPR"). On September 15, 1977, Respondent was convicted by a plea of guilty to a misdemeanor violation of NYPL § 220.03 (A), criminal possession of a controlled substance in the seventh degree. He was placed in deportation proceedings. On October 6, 1988, Respondent applied for, and was granted, a 212(c) waiver. On November 17, 2006, Respondent was convicted by a plea of guilty to violating NYPL § 220.03, criminal possession of a controlled substance in the seventh degree. Respondent was sentenced to time served. On December 28, 2012, Respondent attempted to re-enter the United States ("U.S.") following an eighteen day trip to Mexico and was detained by the Department of Homeland Security ("DHS"). On July 11, 2013 DHS served Respondent by regular mail with a Notice to Appear ("NTA"). He was charged with removability pursuant to section 212(a)(2)(A)(i)(II) of the Immigration and Nationality Act ("INA") alleging that

Respondent has been convicted of a controlled substance violation. Respondent now requests that this Court terminate proceedings with prejudices because DHS has failed to establish by clear and convincing evidence that Respondent was convicted of a crime "relating to a controlled substance[,] as defined in section 102 of the Controlled Substances Act (21 U.S.C. § 802))." INA § 237(a)(2)(B).

For the reasons that follow, this Court grants Respondent's motion to terminate with prejudice.

## II.    LEGAL STANDARDS AND ANALYSIS

### A. Removability

DHS bears the burden of establishing by clear and convincing evidence that an alien is deportable as charged. See INA § 240(c)(3)(A); 8 C.F.R. § 1240.8(a); see also Woodby v. INS, 385 U.S. 276, 286 (1966). Thus, to sustain this charge DHS must establish by clear and convincing evidence that Respondent was convicted of a crime "relating to a controlled substance[,] as defined in section 102 of the Controlled Substances Act (21 U.S.C. § 802))." INA § 237(a)(2)(B).

### i. Categorical Approach

The categorical approach is applied to the criminal statute at issue in the removability stage to determine whether the "minimum criminal conduct necessary" to sustain a conviction would constitute a crime "relating to a controlled substance [,] as defined in section 102 of the Controlled Substances Act ("CSA") (21 U.S.C. §802))." INA § 237(a)(2)(B); Moncrieffe v. Holder, 133 S.Ct. 1678 (2013).

In Moncrieffe v. Holder, the Supreme Court reaffirmed the application of the categorical approach. 133 S.Ct. 1678, 1684 (2013). Under the categorical approach, the court examines whether "the state statute defining the crime of conviction" fits within the "generic" federal definition of a corresponding violation of the CSA. Moncrieffe, 133 S.Ct. at 1684 (citing Gonzales v. Duenas–Alvarez, 549 U.S. 183, 186 (2007)). The state offense is a categorical match only if a conviction of that offense "'necessarily' involved . . . facts equating to [the] generic [federal offense]." Moncrieffe, 133 S.Ct. at 1684 (citing Shepard v. United States, 544 U.S. 13, 24 (2005)).

The categorical approach focuses on the "minimal conduct criminalized by the state statute" that is necessary to sustain a conviction under that statute. Moncrieffe, 133 S.Ct. at 1685 (conviction "rested upon [nothing] more than the least of th[e] acts" criminalized) (citing Johnson v. United States, 559 U.S. 133, 137 (2010)); see Gertsenshteyn v. Mukasey, 544 F.3d 137, 143 (2d Cir. 2008) (citing Dalton v. Ashcroft, 257 F.3d 200, 204 (2d Cir. 2001). Under the categorical approach, the court must look only to the statutory elements without considering the facts underlying the conviction. Moncrieffe, 133 S.Ct. at 1684 (citing Gonzales, 549 U.S. at 186); see Gertsenshteyn, 544 F.3d at 143; Martinez v. Mukasey, 551 F.3d 113, 119 (2d Cir. 2008).

Under the categorical test, there must be "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct" that would constitute a violation of

2

the CSA. Moncrieffe, 133 S.Ct. at 1685 (citing Gonzales v. Duenas-Alvarez, 549 U.S. 183, 193 (2007)); see Matter of Ferreira, 26 I&N Dec. 415, 419 (BIA 2014) (remanding for application of the realistic probability test where a State statute covered a controlled substance not included in the Federal controlled substance schedules, and noting that the "'realistic probability test' is part of the initial inquiry that an Immigration Judge must undertake when applying the categorical approach"); Matter of Chairez, 26 I&N Dec. 349, 357 (finding no realistic probability that a state statute would be applied in a manner constituting a removable offense where the Respondent identified no decision where anyone had been so prosecuted).

First, this Court must analyze the minimum conduct criminalized by the statute. Here, Respondent was convicted of violating NYPL § 220.03, which provides, "[a] person is guilty of criminal possession of a controlled substance in the seventh degree when he or she knowingly and unlawfully possesses a controlled substance…" NYPL § 220.03. In New York, controlled substances, are defined in the New York Public Health Law § 3306. New York Public Health Law (NYPHL) § 3306, Schedule III(g). This section lists numerous interchangeable substances, some or all of which could constitute a violation of NYPL § 220.03. In New York, "chorionic gonadotropin" is a controlled substance. New York Public Health Law (NYPHL) § 3306, Schedule III(g). In contrast, the CSA does not list "chorionic gonadotropin" as a controlled substance. See 21 U.S.C. §802 (6) (defining "controlled substance" as "a drug… included in schedule I, II, III, IV, or V"); 21 U.S.C. §812 (Schedules I-V.) Thus, the minimum conduct required for a conviction under NYPL § 220.03 includes conduct that would not constitute a removable offence under INA § 237(A)(2)(B)(i).

Second, this Court must analyze whether there exists "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct" that would not constitute a violation of the CSA. Moncrieffe, 133 S.Ct. at 1685 (citing Gonzales v. Duenas-Alvarez, 549 U.S. 183, 193 (2007)). The BIA recently affirmed that the "'realistic probability test' is part of the initial inquiry that an Immigration Judge must undertake when applying the categorical approach." Ferreira, 26 I&N Dec. at 419. The BIA thus held when "a State statute on its face covers a type of object or substance not included in the Federal statute's generic definition, there must be a realistic probability that the State would prosecute conduct falling outside of the generic crime" to overcome the removability charge. Id. at 420-21 (relying on Moncrieffe and Gonzales v. Duenas-Alvarez, 549 U.S. 183 (2007)). Therefore, under the realistic probability test, a respondent must demonstrate, by pointing to his own case or other cases, that the State "'in fact did apply the statute in the special (nongeneric) manner.'" Id. at 422 (citing Duenas-Alvarez, 549 U.S. at 193).

Here, Respondent has provided this Court with documents illustrating that New York State has successfully prosecuted criminal defendants accused of unlawfully possessing "chorionic gonadotropin." Respondent's submission at Tabs J; K (Nov. 18, 2014).[1] Namely,

---

[1] DHS argues that Respondent must provide examples of cases where a Defendant was *convicted* of possession of chorionic gonadotropin in order to sustain their burden that there exists "a realistic probability, not a theoretical possibility," that New York state would prosecute this as a crime under NYPL § 220.03. I disagree with this position. It is well established that "to prosecute" or to "successfully prosecute" does not connote a successful *conviction*, but rather "to *institute* and pursue a criminal action against (a person)." Black's Law Dictionary (9th ed. 2009)(emphasis added). In addition caselaw supports this notion, "It is now well settled that the mere application for, and issuance of, a warrant on a criminal charge, constitutes a criminal prosecution." Schneider v. Schlang, 159

Respondent has provided the February 2007 indictment from Albany County against Clair Godfrey for selling chorionic gonadotropin. Respondent's submission at Tab J (Nov. 18, 2014). In addition, Respondent has provided the June 2010 indictment from Albany County against multiple defendants for selling chorionic gonadotropin. Respondent's submission at Tab K (Nov. 18, 2014). These indictments demonstrate that there is more than a "theoretical possibility" that people would be prosecuted under the NYPL involving this drug. Moncrieffe, 133 S. Ct. at 1685; see also Matter of Chairez, 26 I&N Dec. 349, 357 (BIA 2014) (finding no realistic probability that a state statute would be applied in a manner constituting a removable offense where the respondent identified no decision where anyone had been so prosecuted). Respondent has therefore demonstrated that there is a realistic probability that New York prosecutes cases under the Penal Law in a "nongeneric" manner. Ferreira, 26 I&N Dec. at 421-22. Accordingly, his conviction for criminal possession of a controlled substance under NYPL § 220.03 is not categorically one for an offense relating to a controlled substance violation under INA § 237(a)(2)(B)(i).

## ii. Divisibility

Where a state statute does not categorically match its federal counterpart, this Court may look to see whether the state statute is divisible. A criminal statute is divisible, so as to warrant a modified categorical inquiry, only if (1) it lists multiple discrete offenses as enumerated alternatives or defines a single offense by reference to disjunctive sets of "elements," more than one combination of which could support a conviction; and (2) at least one (but not all) of those listed offenses or combinations of disjunctive elements is a categorical match to the relevant generic standard. Descamps v. United States, 133 S. Ct. 2276, 2281-83 (2013); see Matter of Chairez, 26 I&N Dec. 349, 353 (BIA 2014) (rejecting Matter of Lanferman "to the extent that it is inconsistent with [the Board's] understanding of the Supreme Court's approach to divisibility in Descamps"). In such a case, "a court may determine which particular offense the noncitizen was convicted of by examining the charging document and jury instructions, or in the case of a guilty plea, the plea agreement, plea colloquy, or 'some comparable judicial record' of the factual basis for the plea.'" Moncrieffe v. Holder, 133 S. Ct. 1678, 1684 (quoting Nijhawan v. Holder, 557 U.S. 29, 35 (2009)).

The modified categorical approach does not apply merely because the elements of a crime can sometimes be proved by reference to *conduct* that fits the generic standard; under Descamps, such crimes are merely "overbroad," not divisible. Descamps v. United States, 133 S. Ct. 2276, 2281-83 (2013); United States v. Beardsley, 691 F.3d 252, 268-69 (2d Cir. 2012). The modified categorical approach may *only* be used when a defendant has been convicted under a divisible statute. Descamps, 133 S. Ct. at 2281.

Here, Respondent was charged under NYPL § 220.03, which states, "[a] person is guilty of criminal possession of a controlled substance in the seventh degree when he or she knowingly and unlawfully possesses a controlled substance…" N.Y. Penal Law § 220.03. In New York, controlled substances, are defined in the New York Public Health Law § 3306. New York Public

---

A.D. 385, 387, 144 N.Y.S. 543, 544 (App. Div. 1913). Ultimately, there is no evidence that the Board intended to require anything other than then plain meaning of the word "prosecute."

4

Health Law (NYPHL) § 3306, Schedule III(g). This section lists numerous interchangeable substances, some or all of which could constitute a violation of NYPL § 220.03. These individual substances are not disjunctive elements of the offense, but rather interchangeable substances that would qualify as a controlled substance. Further, Respondent has provided this Court with case law that illustrates that New York Courts often issue single indictments containing multiple controlled substances. See People v. Rivera, 257 A.D.2d 425 (N.Y. App. Div. 1999)(" [W]e would find that the count charging defendant with criminal possession of a controlled substance in the third degree was not duplicitous under the facts presented, since it properly aggregated all the drugs simultaneously found in defendant's constructive possession.") Accordingly, a Defendant could be convicted for any of the interchangeable "controlled substances" listed on their indictment. Thus, I find that NYPL § 220.03 is not divisible.

Even assuming, arguendo, that Criminal Possession of a Controlled Substance in the Seventh Degree is divisible, a thorough review of the record reveals that DHS has failed to meets its burden to establish by clear and convincing evidence that Respondent was convicted of a removable offense. Moncrieffe, 133 S. Ct. at 1684. The modified categorical approach examines the record of conviction to determine whether it establishes that Respondent's conviction involved a drug that is considered a controlled substance under the CSA. Id. The record of conviction in the present matter includes; 1) the certificate of disposition and 2) the criminal complaint.

First, the certificate of disposition does not identify the drug with which Respondent was convicted of possessing. Therefore, this document fails to satisfy the burden of establishing by clear and convincing evidence that Respondent is removable. INA § 240(c)(3)(A). Second, the criminal complaint does not qualify as a charging document. According to New York Law, a defendant has a right to be prosecuted by "information," a document that bears a higher evidentiary standard that a criminal complaint. See New York Criminal Procedure Law ("NYCPL") § § 100.10(1), (4), 170.65(1). Such a document may be converted into a charging document in two instances, 1) if the prosecution provides additional information of the crime charged or 2) the defendant expressly waives his right to be prosecuted by information. See NYCPL § § 170.65(1), (5). Here, DHS has not presented any evidence that either of these conditions have been met. Accordingly, it is cannot be considered a charging document and cannot be used as the basis for finding Respondent removable. INA § 237(a)(2)(B)(i)

## III.   Conclusion

In sum, DHS failed to establish removability by clear and convincing evidence. Respondent's conviction under NYPL § 220.03 is categorically broader than INA § 237(a)(2)(B) because "Chorionic gonadotropin" is a controlled substance under New York, but not under the CSA. Further, the Respondent has demonstrated there is a realistic probability of prosecution for possession of chorionic gonadotropin pursuant to NYPL § 220.03. Finally, this Court finds that the statute is not divisible, and even assuming arguendo that it was, DHS has failed to prove by clear and convincing evidence that Respondent was charged with a crime that would make him removable pursuant to INA § 237(a)(2)(B)(i).

Accordingly, the following order will be entered:

## ORDER

**IT IS HEREBY ORDERED** that the proceeding be terminated with prejudice.

_____June 25, 2015_____          _____Philip Morace_____

Date                                Philip Morace
                                    Immigration Judge

6

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
26 FEDERAL PLAZA
NEW YORK, NEW YORK

File No: ███████████                              Date: September 20, 2013

In the Matter of:                           :
                                            :
███████ NUNEZ                               :       IN REMOVAL
                                            :       PROCEEDINGS
Respondent                                  :
                                            :

CHARGES:         INA § 237(a)(2)(B)(i)       Controlled Substance Offense

APPLICATIONS:    Motion to Terminate

ON BEHALF OF RESPONDENT                      ON BEHALF OF DHS
Michael Z. Goldman                           Meida S. Powery
875 Avenue of the Americas, Suite 2302       Assistant Chief Counsel
New York, NY 10001                           26 Federal Plaza, Room 11-130
                                             New York, NY 10278

## DECISION AND ORDERS OF THE IMMIGRATION JUDGE

In this removal proceeding, the United States Department of Homeland Security (DHS) charges ███████ Nunez (Respondent) with removability under Immigration and Nationality Act (INA) § 237(a)(2)(B)(i) based upon Respondent's conviction for criminal possession of a controlled substance in the seventh degree in violation of New York Penal Law (NYPL) § 220.03. Respondent contested the charges. Because DHS failed to prove by clear and convincing evidence that Respondent was convicted of a deportable offense, the Court terminates this proceeding.

### I.    Procedural History

Respondent is a thirty-six-year-old native and citizen of the Dominican Republic. [Exh. 1]. He entered the United States as a lawful permanent resident on November 27, 1992. Id. On August 12, 2000, Respondent pleaded guilty to criminal possession of a controlled substance in the seventh degree in violation of NYPL § 220.03. DHS Submission. [Exh. 2, Tab C].

DHS served Respondent with a Notice to Appear (NTA), charging him with removability under INA § 237(a)(2)(B)(i) (Controlled Substance Offense). In support of the charges, DHS

1

submitted Respondent's RAP sheet, Respondent's immigrant visa and alien registration, a certificate of disposition, a misdemeanor complaint and the sentence and commitment. Id. at Tabs A-D.

On February 11, 2013, the Court ruled that DHS had not sustained the charge of removability based upon the contents of the record at that time. The Court adjourned the case, however, so that DHS could supplement the record of conviction. On June 13, 2013, DHS informed the Court that it would not supplement the record of conviction or lodge any additional charges.

## II.    Evidence

| | |
|---|---|
| Exh. 1: | Notice to Appear (served 5/8/12) |
| Exh. 2: | DHS Submission of March 12, 2012 |
| | Tab A: Respondent's RAP sheet |
| | Tab B: Immigrant Visa and Alien Registration |
| | Tab C: Certificates of Disposition & Sentence and Commitment |
| | Tab D: Certificates of Disposition |
| Exh. 3: | DHS Letter to the Court dated March 13, 2012[1] |

## III.    Removability

DHS bears the burden of establishing by clear and convincing evidence that Respondent is deportable as charged. See INA § 240(c)(3)(A); 8 C.F.R. § 1240.8(a). Thus, to sustain this charge DHS must establish by clear and convincing evidence that Respondent was convicted of a crime "relating to a controlled substance[,] as defined in section 102 of the Controlled Substances Act (21 U.S.C. § 802))." INA § 237(a)(2)(B).

### A. Categorical Approach

To make this determination, the Court must first employ the "categorical approach" to analyze whether the "'minimum conduct necessary to sustain a conviction'" under NYPL §§ 110-130.40 would involve a minor. Gertsenshteyn v. Mukasey, 544 F.3d 137, 143 (2d Cir. 2008) (quoting Dalton v. Ashcroft, 257 F.3d 200, 204 (2d Cir. 2001); see also Martinez v. Mukasey, 551 F.3d 113, 119 (2d Cir. 2008); Dickson v. Ashcroft, 346 F.3d 44, 48 (2d Cir. 2003). The categorical approach requires the existence of "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct" that would constitute a removable offense. Gonzales v. Duenas-Alvarez, 549 U.S. 183, 184 (2007).

Here, Respondent was convicted of violating NYPL § 220.03, which provides that "[a] person is guilty of criminal possession of a controlled substance in the seventh degree when he or she knowingly and unlawfully possesses a controlled substance." In New York, "Chorionic gonadotropin" is a controlled substance. New York Public Health Law (NYPHL) § 3306, Schedule III(g). By contrast, under the Controlled Substances Act (CSA), "Chorionic

---

[1] Exhibits 2 and 3 have not yet been marked into evidence. The Court hereby admits them into the record.

gonadotropin" is not a controlled substance. See 21 U.S.C. § 802 (6) (defining "controlled substance" as "a drug...included in schedule I, II, III, IV, or V"); 21 U.S.C. § 812 (Schedules I-V). Thus, the NYPL § 220.03 is broader than 21 U.S.C. § 802. Thus, the minimum conduct required for a conviction under NYPL § 220.03 includes conduct that would not constitute a removable offense under INA § 237(a)(2)(B)(i). Moreover, because the legislature in New York expressly chose to include "Chorionic gonadotropin" as a controlled substance, there is "a realistic probability, not a theoretical possibility," that New York would apply its statute to conduct that would not constitute a removable offense. Cf. Duenas-Alvarez, 549 U.S. at 184; see Cabantac v. Holder, --- F.3d ----, 2013 WL 4046052 (finding that a California offense is categorically broader than its federal counterpart because it defines "controlled substance" more broadly than the CSA).

Criminal possession of a controlled substance in the 7th degree, however, is divisible because it "contain[s] an element ...that c[an] be satisfied either by removable or non-removable conduct." Matter of Lanferman, 25 I&N Dec. 721, 727 (2012). Thus, the Court must use the modified categorical approach. Id.

## B. Modified Categorical Approach

The "modified categorical approach" allows a court to look beyond the statute, to the record of conviction, for the limited purpose of determining whether the alien's *conviction*, not the alien's *conduct*, falls under the part of the statute that would render the alien removable. See Dickson, 346 F.3d at 48-49 (citing Kuhali, 266 F.3d at 106-07); Matter of Vargas-Sarmiento, 23 I&N Dec. 651, 654 (BIA 2004), petition for review denied by Vargas-Sarmiento v. U.S. Dep't of Justice, 448 F.3d 159, 162 (2d Cir. 2006).[2]

### 1. Record of Conviction

Under the modified categorical approach, the court's inquiry is limited to the "record of

---

[2] Descamps v. United States involves the application of the modified categorical approach. No. 11-9540, 570 U.S. ___ (2013). In Descamps the Supreme Court made it clear that a federal sentencing judge may not apply the modified categorical approach and look to the underlying court record when the statute of conviction has a single set of indivisible elements. The Court also explained that the modified categorical approach is a tool to help adjudicators implement the categorical approach, rather than an exception to the categorical approach itself. The Court also made it clear that an adjudicator applying the modified categorical approach may only examine the record of conviction to determine the statutory offense or section the person was convicted of, not to determine the facts or conduct that led to the conviction. NYPL § 220.03 is a statue that has a single set of indivisible elements. Therefore, if this court were to apply the Descamps approach, it would not be able to utilize the modified categorical approach in the instant case. Rather, it would be limited to determining removablity under the categorical approach discussed above. However, it is unclear whether Descamps applies to immigration cases. In Descamps, the Supreme Court adopted a definition of "divisibility" for purposes of the ACCA that is in direct conflict with the Board's definition for purposes of the INA. See Matter of Lanferman, 25 I&N Dec. at 721. Descamps may not abrogate Lanferman because the Supreme Court adopted its approach to divisibility based upon factors such as the text and history of the ACCA, Sixth Amendment considerations and the practical difficulties of alternative approaches. While some of these factors may be relevant to the immigration context, others may be absent or significantly different in the immigration context. For these reasons, after Descamps, it remains unclear if the federal courts will define divisibility for immigration purposes in the same way they have in the criminal context.

conviction." Dickson v. Ashcroft, 346 F.3d 44, 52 (2d Cir. 2003); see also Shepard v. U.S., 544 U.S. 13, 20 (2005); Taylor v. U.S., 495 U.S. 575, 602 (1990). The record of conviction includes "those documents enumerated in the regulations to be admissible evidence in proving a criminal conviction in any proceeding before an Immigration Judge." Matter of Madrigal-Calvo, 21 I&N Dec. 323, 326 (BIA 1996); see also INA § 240(c)(3)(B)(i)–(vii). Additionally, the record of conviction includes "the charge, indictment, plea, judgment or verdict, sentence, and transcript from court proceedings." Id.; see also Dickson, 346 F.3d at 52; Shepard, 544 U.S. at 26. A police report is not part of the record of conviction. Matter of Ahortalejo-Guzman, 25 I&N Dec. 465, 465 (BIA 2011).

In New York, a criminal defendant has the right to be prosecuted by an "information," a document with higher evidentiary standards than a complaint. See New York Criminal Procedure Law ("NYCPL") §§ 100.10(1), (4), 170.65(1). A criminal complaint becomes a "charging document" only if it has been converted into an information. NYCPL § 170.65(1) (a misdemeanor complaint is converted into an information when it is supplemented by a "supporting deposition" and other documents that "taken together satisfy the requirements for a valid information"). Alternatively, a complaint can constitute a charging document if the defendant has expressly waived the right to be prosecuted by an information. NYCPL § 170.65(3). Criminal courts may not assume or infer a waiver of this right. People v. Weinberg, 315 N.E.2d 434, 435 (N.Y. 1974); People v. Kalin, 906 N.E. 2d 381, 382 (N.Y. 2009). While not binding on this Court, the Third Circuit has concluded that it was unclear whether a police officer's written statement constituted "the relevant charging documents under New York law" because a "misdemeanor complaint 'must…be replaced by an information' unless the defendant 'waive[s] prosecution by information and consent[s] to be prosecuted upon the misdemeanor complaint.'" Thomas v. Attorney General of U.S., 625 F.3d 134, 145 (3d Cir. 2010) (quoting NYCPL §§ 170.65(1), (3)) (alterations in original).

Here, the only indication that the Respondent was convicted for possessing "a controlled substance," as defined by 21 U.S.C. § 802, is the misdemeanor complaint, which is a statement by a police officer accusing the Respondent of possessing heroine. [Exh. 2, Tab C, at 3]. However, the record does not contain any evidence indicating that the misdemeanor complaint was converted to an information by additional documents satisfying "the requirements for a valid information" or that the Respondent waived his prosecution by information. See NYCPL §§ 170.65(1), (3). Thus, it is unclear whether the misdemeanor complaint is the charging document. Accordingly, it is not part of the record of conviction and cannot be used to establish that the Respondent possessed a controlled substance, as defined by 21 U.S.C. § 802. Ahortalejo-Guzman, 25 I&N at 465.

## 2.    Sufficiency of the "Charging Document"

Even if the misdemeanor complaint were the charging document, it does not establish what substance the Respondent was convicted of possessing. When analyzing a conviction sustained after a jury trial, the court's inquiry is limited to documents establishing the facts "that the jury necessarily had to find" to sustain a conviction. Taylor, 495 U.S. at 602. For example, the court can rely on an "indictment or information and jury instructions" to show what the defendant was charged with and what "the jury necessarily had to find" to sustain a conviction.

4

Id. By contrast, where a defendant pleads guilty, the closest analogs are "the statement of factual basis for the charge…shown by a transcript of plea colloquy or by written plea agreement presented to the court, or by a record of comparable findings of fact adopted by the defendant upon entering the plea." Shepard, 544 U.S. at 20.

The Second Circuit has applied the principles in Taylor and Shepard in several cases involving convictions from guilty pleas. For example, the Court has held that, "[f]or convictions following a plea, the BIA may rely only upon facts to which a defendant actually and necessarily pleaded in order to establish the elements of the offense, as indicated by a charging document, written plea agreement, or plea colloquy transcript." Dulal-Whiteway v. U.S. Dept. of Homeland Sec. 501 F.3d 116, 131 (2d Cir. 2007), abrogated on other grounds by Nijhawan v. Holder, 557 U.S. 29 (2009); see also Akinsade v. Holder, 678 F.3d 138, 144 (2d Cir. 2012); James v. Mukasey, 522 F.3d 250, 258 (2008); Wala v. Mukasey, 511 F.3d 102, 108 (2d Cir. 2007).

Similarly, in dicta, the Court has stated:

"In this case, the IJ and BIA relied upon a factual allegation in the charging instrument—that James had sexual intercourse with a sixteen-year-old when he was twenty-two—to conclude that James was convicted of sexual abuse of a minor. But this factual allegation was not 'actually and necessarily pleaded' to in order to establish the elements of endangering the welfare of a child. Dulal-Whiteway, 501 F.3d at 131. New York Penal Law section 260.10 does not require engagement in sexual intercourse, see People v. Chase, 186 Misc.2d 487, 720 N.Y.S.2d 707, 708 (2d Dep't 2000), and James did not so plead; he admitted to having had 'sexual contact with a minor.'"

James, 522 F.3d at 257-58. Likewise, the Court has vacated a removal order because the respondent "did not admit to, was not charged with, and was not required to plead to" conduct that would render him removable. Wala, 511 F.3d at 109.

The Board treated the charging document similarly in Lanferman, where the critical inquiry was the presence of a gun. In that case, the Board held that the charging document, which alleged that Respondent used a gun, combined with the plea colloquy, which indicated that Respondent admitted to using a gun, were sufficient to establish removability. Lanferman, 22 I&N Dec. at 72-73.

Here, DHS submitted the misdemeanor complaint. The misdemeanor complaint alone, however, only establishes what substance the Respondent was accused of possessing, not the substance the Respondent was convicted of possessing. Moreover, DHS refused to submit "a transcript of plea colloquy, [a] written plea agreement presented to the court, or [] a record of comparable findings of fact adopted by the defendant upon entering the plea," Shepard, 544 U.S. at 20. These documents would have established the conduct to which the Respondent "actually and necessarily pleaded." Dulal-Whiteway 501 F.3d at 131. Therefore, the record of conviction

5

does not establish what substance the Respondent was convicted of possessing. Id.

## C. Conclusion

In sum, DHS failed to establish removability by clear and convincing evidence. Respondent's conviction under NYPL § 220.03 is categorically broader than INA § 237(a)(2)(B) because "Chorionic gonadotropin" is a controlled substance under New York, but not under the CSA. Further, the record of conviction does not indicate the substance that Respondent was convicted of possessing. DHS failed to establish that the misdemeanor complaint is part of the record of conviction because it is unclear whether it was charging document in Respondent's criminal case. Even if the misdemeanor complaint were the charging document, it does not establish what substance Respondent "actually and necessarily pleaded" guilty to possessing. Dulal-Whiteway 501 F.3d at 131; see also Akinsade, 678 F.3d at 144; James, 522 F.3d at 258; Wala, 511 F.3d at 108.

Accordingly, the following order will be entered:

## ORDER

**IT IS HEREBY ORDERED** that the proceeding be terminated with prejudice.

Alice Segal
Immigration Judge

Dated: 9/20/13

6

*Exhibit B*

1

FA1AASMIS                    Sentence


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------x

UNITED STATES OF AMERICA,

         v.                              14 CR 813 (KPF)

EDWARD SMITH,

                 Defendant.

----------------------------x

                                         New York, N.Y.
                                         October 1, 2015
                                         10:30 a.m.


Before:

                 HON. KATHERINE POLK FAILLA,

                                         District Judge


                         APPEARANCES

PREET BHARARA
     United States Attorney for the
     Southern District of New York
THOMAS MCKAY
     Assistant United States Attorney

DANIEL G. HABIB JONATHAN ANDREW MARVINNY
     Attorneys for Defendant Smith

FA1AASMIS                    Sentence

(Case called)

MR. MCKAY:  Good morning, your Honor.

Tom McKay, for the government

THE COURT:  Good morning, sir.

MR. HABIB:  Good morning, your Honor.

Federal Defenders of New York, by Daniel Habib and Jonathan Marvinny, on behalf of Mr. Smith

THE COURT:  Good morning to each of you.

And, Mr. Smith, good morning.

THE DEFENDANT:  Morning, ma'am.

THE COURT:  Mr. Smith, are there members of your family here today?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Do you want to introduce them to me or just let me know generally who they are, sir.

THE DEFENDANT:  I got my mother, my baby mother, my friend and my uncle.

THE COURT:  All right.  Thank you very much.  And let me just greet those individuals who are friends and family members of Mr. Smith.  I know how much he appreciates your support.  I believe each of you has submitted a letter to me in connection with the sentencing which I have read and I also appreciate you being here today again to show your support for Mr. Smith.

Mr. Smith, let me speak to you for a moment, sir.

3

FA1AASMIS                    Sentence

I'll explain why.  This is a sentencing proceeding and sentencing proceedings take different lengths.  This one may take a little bit longer than other proceedings of people you may have talked to about it and that's because your counsel have raised a number of very important issues and their resolution is very important to the sentence that I ultimately impose.  Why I'm telling you this, sir, is that I understand that ultimately you just want to know the number.  You want to know the period of time to which you are sentenced.  Right now as I'm speaking to you I cannot tell you what that number is. I need to speak with your counsel and with counsel for the government and to resolve a number of issues regarding the application of the United States Sentencing guidelines and then I need to hear from everybody regarding their views and your view, sir, about sentence irrespective of the guidelines calculation.  So I wanted to let you know that to the extent that this is going on for a long period of time or to the extent that I have a series of legal discussions with the attorneys involved in this case, I remain mindful of the fact that this is most important to you of anyone in the room.  So I'm asking for your patience because ultimately the discussions that I have with counsel will result in me imposing a fairer sentence.  All right, sir?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  All right.  Let me also let you know what

4

FA1AASMIS                Sentence

I intend to do.  There is a lingering, a remaining post trial motion from the trial and I want to resolve that before sentencing.  Then I'd like to talk to the parties about sentencing.  I'll talk to you about what I have and make sure I have all of it.  And then I have both guidelines and non guidelines issues to raise with the parties.  When those are resolved what I'll try to do, assuming I can, is to let you know how -- my views of -- how I find the guidelines to be, how I find them to apply in this case.  And with that I think it would be better for you to sort of address your sentencing remarks based not on what I might find but what I have found with respect to the guidelines.  And it may be that between the discussions of the guidelines issues and your discussions with me about sentencing, I might take a break.  It may be that after hearing from you and after resolving the guidelines issues I might take a break and step off the bench but there is a lot to cover today and I want to you make sure that give everyone the appropriate amount of due.  And since I'm not coming out on the bench with a preconceived idea of what the sentence is I'm letting everyone know that I may step off the bench in order to resolve these issues.  So with that in mind, let me begin with the posttrial motion.

          Mr. Habib, are you standing on your letter?

          MR. HABIB:  Yes, your Honor.

          THE COURT:  Okay.  Thank you.  And I don't believe,

FA1AASMIS                    Sentence

5

Mr. McKay, there was a government response but I could be mistaken.  Am I correct, sir?

MR. MCKAY:  Your Honor, I didn't see it on the docket. I do hold in my hand a government response dated April 20, 2015.  This letter as sent be ECF and e-mail.  I don't know if it in fact made its way by e-mail.

THE COURT:  Can you hand it up?

MR. MCKAY:  I can.  Although please ignore my underlining.

THE COURT:  It's fine.  I didn't see it on the docket. That doesn't mean we didn't receive it in chambers.

MR. MCKAY:  Yes, your Honor.

THE COURT:  Mr. Habib, did you receive a copy of this letter?

MR. HABIB:  Yes, your Honor.

THE COURT:  At or about the time it was sent, sir?

MR. HABIB:  Yes, your Honor.

(Pause)

THE COURT:  Thank you.  Sir, I have read your letter. Will you stand on the letter?

MR. MCKAY:  I will stand on the letter, your Honor.

THE COURT:  Thank you very much.

All right.  By letter application dated April 16th of this year Mr. Smith argued that the evidence at trial had not proven the elements of the 841 and 922(g) offenses beyond a

6

FA1AASMIS                    Sentence

reasonable doubt.  Recognizing that I must interpret the evidence in the light most favorable to the government, I find that the elements were satisfied on the narcotics.  And I'm not listing the cases but I know the parties and the lawyers and they know what the standards are for opposing these motions.

On the specific issue of the narcotics offense there was testimony from several officers concerning the recovery of narcotics for Mr. Smith at the precinct house.  There was introduction of plastic packaging and vouchering information. There was introduction of testimonial stipulation concerning the recovery of cocaine base in a form known as "crack cocaine" from the plastic packaging material and there was expert testimony regarding distribution versus personal use quantities.

With respect to the firearms offense, there was the recovery of the firearm.  There is testimony placing it in the hands of the person of Mr. Smith.  And there was a stipulation concerning his prior felony conviction and one concerning the intrastate nexus element.

So for these reasons I'm denying the post trial motion.  What I'll do now is proceed to sentencing.

The record that I have includes the following -- and I'll like the parties to tell me if anything is missing.  I have a presentence report that is dated July 22, 2015.  There are a number of objections contained in an addendum to the

7

FA1AASMIS                      Sentence

report.  That section contains as well as the government's responses and it is followed by a sentencing recommendation from the probation office.  I have a defense sentencing submission that is dated August 14th of 2015.  It contains a report.  It contains several decisions regarding immigration issues.  It contains letters from family and friends and it contains a report from Dr. Cheryl Paradis.  I have a government sentencing submission that is dated August 21st of 2015 and that contains a plea transcript.  And then I've received separate letters from Ms. West, mother of Mr. Smith.  And from I believe a woman named Sojourner Gilliam.  Those were sent to me separately from the letters that I received in the defense submission.

Mr. McKay, is there anything further I should have from the government?

MR. MCKAY:  No, your Honor.

THE COURT:  All right.  Mr. Habib, is there anything further I have should?

MR. HABIB:  No, your Honor.

THE DEFENDANT:  Thank you.  Sir, while you are standing, could you tell me whether you and Mr. Marvinny and Mr. Smith have had sufficient time under Federal Rule of Criminal Procedure 32 to review and discuss and submit objections to the presentence report?

MR. MCKAY:  We have.

8

FA1AASMIS                    Sentence

THE COURT:  Other than those that are identified in the section of the presentence report where it says "objections", do you have any additional objections?

MR. HABIB:  No your Honor.

THE COURT:  All right.  Mr. Smith, let me ask you, sir, did you have an opportunity to meet with counsel and to look at the presentence investigation report in this case?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  And did you discuss any objections or any corrections or any clarifications that you wanted to make to your report with your counsel?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Is it your understanding, sir, and that to the extent you had issues with the presentence report your counsel communicated those issues to me?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Thank you, sir.

Mr. McKay, has the government had sufficient time under Rule 32 to review the presentence report?

MR. MCKAY:  Yes, your Honor.

THE COURT:  And other than your responses to the defense's guidelines challenges, do you have any objections to the report?

MR. MCKAY:  No, your Honor.

THE COURT:  All right.  Thank you.  I'm going to --

9

FA1AASMIS                    Sentence

basically, I will adopt the presentence report except to the extent that I modify it but we'll talk about that after the issues that I want to raise with the parties.  Let me begin please with the government.

Mr. McKay, I don't see this as a case where anyone is seeking restitution or forfeiture; is that correct, sir?

MR. MCKAY:  That's correct, your Honor.

THE COURT:  OK.  Mr. Habib, could you talk to me a little bit about the incident in the prison.  And if you prefer not to, that's fine.  I don't really have clarity first of all as to how many of them there were and secondly, as to what they involved.

MR. HABIB:  May I have a moment on that, your Honor?

THE COURT:  Certainly.

(Pause)

MR. HABIB:  Thank you, your Honor.

Candidly, we're not in a position to place facts on the record with respect to these offenses.  We simply note that the internal disciplinary procedures of the Bureau of Prisons don't conform to the same standards as for example this Court does on unfair and we'll leave it at that.

We will also note that as a result of some of these infractions that Mr. Smith as we've indicated in our sentencing submission wasn't --

THE COURT:  I am going to ask you to slow down please,

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

FA1AASMIS                        Sentence

sir.

MR. HABIB: As a result of these infractions as we'd noted in our sentencing submission, Mr. Smith was at the Special Housing Unit, the SHU at MCC for a period of about three months including the period immediately preceding the trial.

THE COURT: Okay. Sir, a few more questions for you. In paragraph 686 of the presentence report there is an indication from the probation office that they are seeking medical and psychological records or updates on medical and psychological issues from the MCC. I have received some information from the defense in the form of Dr. Paradis' report. But is there other information that should be brought to my attention regarding any current or recently experienced medical or psychological conditions that Mr. Smith has had?

MR. HABIB: There isn't. Briefly Mr. Smith is not currently receiving any form of medical or psychiatric treatment at the MCC.

THE COURT: Is your position that he should?

MR. HABIB: He should, your Honor, but as is true the internal disciplinary system in the Bureau of Prisons, the internal, medical and psychiatric care systems of the Bureau of Prisons is suboptimal. It is not uncommon for incarcerated people to wait substantial periods of time to receive medical treatment. It is not uncommon for that medical treatment to be

11
FA1AASMIS                    Sentence

cursory or unsatisfactory at least from the perspective of the its therapeutic value.  At this point Mr. Smith is not receiving medical or psychiatric treatment.  I think it's clear from Dr. Paradis' report that he requires it.

THE COURT:  All right.  Sir, do I understand that at one point he was receiving medication but refrains from taking that medication because of its side effects.

MR. HABIB:  Mr. Smith at one point was prescribed remeron for depression.  The side effects include dizziness, drowsiness, lightheadedness.  Those symptoms were, I think as many people administered psychiatric drugs find, worse than the disease they were treating.

THE COURT:  All right.  And, sir, much of the material that I've received in the defense submissions speak to the depression and what I'll call just for shorthand the psychological issues, are there medical issues of which I should be aware?

MR. HABIB:  There are no physical medical issues, no, your Honor.

THE COURT:  All right.  Sir, turning now to paragraph 76, just to a clarification that I was seeking, there's reference there to Mr. Smith indicating he has not filed a tax return yet.  There seems to have been fax returns filed perhaps in his name.  I was wondering if this might be the product of a faulty memory on his part or perhaps someone is using his name

12

FA1AASMIS                        Sentence

to obtain tax returns.

MR. HABIB:  I think more likely the former, your Honor.

THE COURT:  OK.  All right.  Sir, may I direct your attention please to pages 26 and 27 of the presentence report. It is my hope that you will find there some suggested special conditions of supervised release.

MR. HABIB:  Yes.

THE COURT:  And if you do find them my questions are, have you discussed them with Mr. Smith and do have you a position with respect to their imposition?  And if you need time please take that.

MR. HABIB:  One moment, please, your Honor.

THE COURT:  Thank you.

(Pause)

MR. HABIB:  Thank you.  Your Honor, I have reviewed the recommended conditions with Mr. Smith.  I agree with them. In particular, I think substance abuse treatment ideally with a mental health component is an extremely logical alternative for Mr. Smith.  Once he's placed on supervised released.  I think in light of his demonstrated mental health needs, his diagnosis of depression and his mental health treatment, as well as substance abuse which has been a form of self-medication, both of those approaches to therapy would assist him in reiterating into the community.

13
FA1AASMIS                    Sentence

THE COURT:  All right.  Thank you very much.

Sir, let me turn then to the guidelines objections that have been raised by the parties.  And I suppose it should come as no surprise that the one that for me has required the most thought is the first which is, is the question of Mr. Smith is in fact a career offender.  I don't think the parties are disputing that he is in criminal history category six irrespective of this determination.  But I believe the issue is the categorization of the two offenses for criminal sale of a controlled substance in the fifth degree.  I promise you, sir, that I have both read and outlined about your submission and the government's submission to me, so I don't need you to restate it.  But I do want to understand a little bit more.  So let ask some question about it.

You've seen the government's response.  Would you want to say anything in the form of a reply?

MR. HABIB:  I think that I can focus the inquiry more precisely.  Let me begin with what the government does not dispute.  The government does not dispute that the New York control substance is scheduled at the time of Mr. Smith's conviction for attempted criminal sale of a controlled substance in the fifth degree was categorically broader than the federal statute.  That the New York schedule included a substance not federally scheduled.

The government also does not appear to dispute that as

14

FA1AASMIS                    Sentence

a matter of New York Law the nature of the controlled substance possessed is not an element of a Section 220.31 conviction. That is to say it is not a fact on which a jury must agree unanimously in order to return a conviction or a fact to which a defendant must admit in the course of entering a guilty plea. As I read the government's papers, those propositions are not disputed. I think the clash in this case boils down to a very precise issue which is the distinction between elements and needs. It's Mr. Smith's position that under the Supreme Court's decision in Descamps the categorical approach and to the extent available the modified categorical approach only permits a sentencing court to consider elements of a defendant's prior offense. And "element" means those things on which a jury must unanimously agree or a defendant must admit in the course of a plea colloquy.

The government as I understand them takes the position that in fact there is no distinction between "elements" and "means". That is, any time a statute -- and again at the risk of categorizing --

THE COURT: They'll be able to inform me.

MR. HABIB: But I understand their position to be there is no difference between an element and a means as long as a state statute contains disjunctive phrasing and lists different ways of committing an offense whether a jury must find them unanimously or whether they're essential elements or

15
FA1AASMIS                    Sentence

not, a Court is permitted consult Shepherd documents to ascertain which of those alternative means forms the basis of the defendant's prior conviction and then to take that analysis and apply it to the generic federal offense.

In our view that position is inconsistent with Descamps and insufficiently respects in values that Descamps was trying to implement.  Our position to be very precise is that under New York Law the nature of the controlled substance is not an element as a result --

THE COURT:  For the fifth degree offense, sir, correct?

MR. HABIB:  Yes.  And again, I do want to be clear about that because it implicates some of the policy concerns that the government's raised.  I can read the statute to your Honor.

THE COURT:  No.  Thank you.

MR. HABIB:  I would distinguish the statute as I have in our papers between some of the higher pre-offenses annotating criminal sale in the third degree which is separately divided into subdivisions.  But more importantly identifies the controlled substance in those subdivisions.

THE COURT:  It does.  But I thought it was identifying it largely in terms about the weight of it.

MR. HABIB:  So 22039, your Honor, for example, says a person is a guilty of criminal sale of a controlled substance

16

FA1AASMIS                    Sentence

in the third degree when he knowingly and unlawfully sells, number one, a narcotic drug; number two, a stimulant, hallucinogen, hallucinogenic substance or LSD; number three, a stimulant and then as your Honor said, again, as you talked about weight.  But at least in the first two subdivisions including the most commonly prosecuted subdivisions, subdivision one it is not a reference to weight.  It's a reference to the type of substance at issue in the narcotic.

THE COURT:  I should say this to all parties and I want to make sure Mr. Smith understands this as well.  Sir, my point in coming to a decision here is to -- excuse the common parlance -- kick the tires.  So I will be asking questions that are or may reveal vulnerability at both sides.  It doesn't mean that I'm coming down on one side or another.  It means that I want to understand these things fully.  So please don't discern too much from the questions that I'm asking.

But to your point, sir, my recollection of the offense in the fourth degree was that again there was a subdivision that simply made reference to the table or the provisions for controlled substances.  Is that not correct?

MR. HABIB:  Criminal sale of a controlled substance in the fourth degree is much more similar to third degree than it is to fifth.  It says a person is guilty of criminal sale of a controlled substance in the fourth degree when he knowingly and unlawfully sells number one, a narcotic preparation; number

FA1AASMIS                    Sentence

two, is dangerous depressant and then it begins to talk about

weight; number three concentrated cannabis; number four, PCP;

number five, methadone and so on.

THE COURT:  All right.

MR. HABIB:  Criminal sale fifth, the only one as the

lowest level, criminal sale offense under New York Law and the

only one that says controlled substance.  It is the only one as

far as my research has revealed as to which the nature of the

controlled substance is not an element.

THE COURT:  So your point, sir, was that an individual

could plead guilty or could be convicted of the fifth degree

offense by simply admitting that he or she had sold one without

identifying which one of the substances that are listed in

table of controlled substances.

MR. HABIB:  Exactly right, your Honor.  It would be a

correct jury instruction or a New York state trial judge to

instruct, in order to convict the defendant of this offense you

must find that he possessed a controlled substance.  It would

be a sufficient allocution at a guilty plea for the defendant

to say, I possessed a controlled substance.

THE COURT:  This may be and very likely will be an

imperfect analogue but it was my understanding that if the

parties, if the government did not care about the punishment

imposed, a plea could be accepted to the 841 federal offense to

the 846 federal offense that had possession with the requisite

18

FA1AASMIS                    Sentence

intent or conspiracy to distribute a control substance without identifying it.

MR. HABIB:  That is correct.  I can cite the case that says it's true and that is United States v. Andino.  But yes, if nothing turns on the nature of a controlled substance that one of the enhanced penalties is B1A and B1B is not applicable, yes, that would be a sufficient allocution.

THE COURT:  You may have seen that had New York decided to outline and have subdivisions within the fifth degree offense for each of the substances containing -- it might be a different issue.  Do you disagree with that?

MR. HABIB:  I don't think -- let me say this.  I will say that unlike the separately subdivided statutes reflecting the higher degree of criminal sale of the statute at issue here really is a simple statute can be written as to indivisibility that says sales of controlled substance, period.

That said, I don't want to make too much of the fact that the term "controlled substance" requires a series of cross-references before we come to the controlled substance schedule.  I don't want overlay that point.  It's not insignificant.  But the fundamental point is not whether there's a series of cross-reference scheduled but what a jury has to find unanimously.  And if a jury doesn't have to find a particular substance unanimously it's not an element as Descamps uses that term and a modified categorical approach

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

19
FA1AASMIS                    Sentence

does the license this court to identify the element even from Shepherd documents because it is not established by the conviction or established by the guilty plea regardless of the defendant's underlying conflict.

THE COURT:  Would you speak please to the cases that are cited by the government regarding, I think they're coming from the Ninth, Fifth and Third Circuit?

MR. HABIB:  Yes.  So first of all, your Honor, I think the principle case is Coronado.  We indicated in our papers that Coronado, the structure of a statute, this Coronado differs from the structure of the statute at issue here.

THE COURT:  The differences in the sentence is that you have five lists rather and one list.

MR. HABIB:  But the more important distinction between the two cases is this, in Footnote Four the noncitizen in Coronado made precisely the argument we made here, that the nature of the controlled substance under the California statutory provision was not an element as Descamps uses that term because it did not require jury unanimity.  The Court rejected that saying he had not cited cases to support that contention and in fact the California jury instructions cut against that position.  That is it was necessary for the Coronado court to consider whether the jury unanimity is required in order to ascertain whether the statue is divisible. That's confirmed by what I think is the on point Ninth Circuit

20
FA1AASMIS                 Sentence

division which is cited in our papers which is Rendone v.

Holder, a case in which we -- was sought but not granted.  So

that the final decision of the Ninth Circuit which specifically

says a statute is not devisable for Descamps purposes merely

because it includes the word -- (inaudible) requirement of jury

unanimity.

The other cases that the government cites -- so the

government cites Abbott.  That's a Third Circuit case.  I think

Abbott is easily distinguishable as the government itself

acknowledges in Abbott the personalities differ based on the

nature of the controlled substance involved similar to the

federal schedule.  So under Apprendi it must be that the jury

would have -- I'll put it very simply.  I won't tell the exact

penalty but let's say a narcotic one year, PCP two years, LSD

three years.  Because the nature of the substance at issue

affected the statutory maximum, the Sixth Amendment would

require -- so that was the basis for the Abbott court's

conclusion that the statute was divisible.  Again, jury

unanimity, how do we know it requires it?  Because Apprendi

requires it.

The fifth Circuit --

THE COURT:  That's of less utility to me I believe.

MR. HABIB:  That's fine.  All I'll say is that in

Gomez Alvarez I think the analysis is sort of not meaningfully

difficult from the analysis in Coronado.  More importantly, the

21

FA1AASMIS                    Sentence

appellant in Gomez Alvarez did not argue that the statute was indivisible.  He said the government hadn't shown that the -- was heroin, the proper Shepherd documents.  So I don't think it can be said that it squarely presented that issue.  I believe the issue is currently pending in the Fifth Circuit.

THE COURT:  Mr. Habib, would you agree with me that there is not definitive New York state case law on the issue of whether this particular offense, whether the fifth degree offense 22031 is divisible or un-divisible?  I think I probably found a handful maybe two handfuls of cases on whole issues and would not suggest they were cases that I could discern an awful lot of useful information for this purpose.

MR. HABIB:  It's a fair point, your Honor.  And I think it reflects what Justice Alito said in Descamps which is that the inquiry is sometimes difficult.  The doesn't mean that it's impossible.  It's the government's burden to prove the applicability to the extent that your Honor is -- I think that has to be resolved in Mr. Smith's favor.

But more fundamentally and I think this is fairly good case law from New York state pointing pretty definitively in this direction.  Let me reiterate the government's not engaged with your state law analysis at all.  They haven't addressed it.  And because in their view it's not relevant, I think it is relevant to speak directly to your Honor's question.  I think the best I'll direct your Honor which I'm sure you've read

22
FA1AASMIS                    Sentence

to --

THE COURT:  Martin or Maldonado.

MR. HABIB:  Well, let me say it that this way.  So I'm looking particularly at pages ten and 11 of our sentencing submission and let me say this.  First of all, you have a trial court case from the Bronx, people v. Archer which says I think that he fairly described holding that the type of controlled substance is not an element of criminal possession of a controlled substance in the seventh is a degree different statute but the relevant language is the same.  I think the Archer case is fairly direct on that point.

THE COURT:  Sure.  It's's also you've noted a trial court case.

MR. HABIB:  Right.  But your Honor is well aware of the deference due care for by trial judges.  There are -- we've also directed your Honor to immigration case interpreting this provision of New York Law which again, obviously, are entitled to respect only insofar as they're persuasive to your Honor.  They are not authoritative constructions but they are constructions of the state law by judges with, who are highly conversant with that method of analysis.  Immigration judges are highly experienced in applying categorical approaches.  This is probably the most commonly litigated issue with immigration decision as relating to removability by immigration law.  So again that's an immigration judge, not an Article III

23

FA1AASMIS                    Sentence

judge.  But there are two judges that have thought long and hard about how this works and they've reached that conclusion. Coming back to certain New York Law that I think proves the point indirectly, I think really our best case is Maldonado.

So, New York statutory law says each count of an indictment may charge one offense only.

THE COURT:  May I stop you for a moment, sir, because I understood from the Maldonado decision that the court found that a defendant had failed to preserve a claim -- duplicity and that charged possession of both marijuana and combine cocaine.

MR. HABIB:  I think it is very common with the Appellate Division decision and my colleague can probably speak to that because he's argued in that court many, many times.  It is extremely common for the Appellate Division to say not reserved in the alternative or we were to consider it we would reject the claim on merits and that's because there are exceptions for preservation requirement.  That's because there are exceptions to the preservation requirement that would license the Appellate Division that reached the issues in certain circumstances.  So I think it's common to see those alternative holdings.

Moving through the cases we have cited on page 11 --

THE COURT:  Sir, I'll stop you again because I have read them.  I will accept them for the persuasiveness they

24

FA1AASMIS                    Sentence

have.  They are and I'm not New York state court cases, New York state courts deciding things.  I'm just confirming that there has not been a Court of Appeals decision on this issue.

MR. HABIB:  There hasn't, your Honor.  And I think the reason for that is not -- I think the reason is actually quite simple.  The vast majority of -- it won't be an issue because the controlled substance will be in evidence as it was in this case.  The case where you can imagine it happening is similar to the Morgan case where let's say a police officer observes a hand-to-hand sale of a vial containing a white powder but before the officer can make the arrest the vial is swallowed or disregarded.  It would not be a defense to that prosecution for the defendant to come in and say they haven't proved that it was cocaine versus heroin because of ambiguity, you must acquit.  That's not the law.  As long as the prosecution can come in and present a case that jurors can reasonably infer from the facts in evidence that the controlled substance wasn't an issue, that's sufficient.  So I think that the reason your Honor doesn't see the case law is not because -- the reason is because I just can't imagine that comes up very often.

THE COURT:  It doesn't matter on the state side, does it?

MR. HABIB:  It doesn't matter for penalty at all not as to this statute.

THE COURT:  Let me ask you to speak to one more issue

25
FA1AASMIS                    Sentence

please.  An argument can be made and this is being made that to accept your position would be to elevate form over substance. I might suggest to the parties that the very existence of the Shepherd Taylor doctoral framework is on some level an elevation of form over substance, it may be a correct one. It's for some rather thoughtful policy reasons but I do want you to speak to the issue inasmuch as it's very clear what he admitted to in his plea.  So let me understand why this isn't an elevation of form over substance or if it is, why it's permissible.

MR. HABIB:  So I think there are a number of responses.  The first is quite simply authoritative.  As Justice Kagan put in Descamps there are several cases of water over the damn.  The categorical approach dates to 1990.  The court has repeatedly reaffirmed that that applies and has repeatedly concluded that even when we know that as a matter of fact what a defendant did if it's not an element it can't be a basis for future punishment.  And it's not just form over substance.  I think there are important in this case particularly important constitutional and fairness considerations driving the application of a categorical approach.  First from a Sixth Amendment perspective when a defendant pleads guilty he is giving up valuable Sixth Amendment rights.  Within those rights is the right to a jury determination of and in fact on which the punishment depends

26

FA1AASMIS                 Sentence

any fact on which of his conviction depends.  So when the defendant waives that right he waives it as Descamps makes quite clear only as to those facts that a jury must find only as to elements.  And Descamps says at page 2291 and it's clear as day, whatever a defendant says about non elemental facts in the course of a plea colloquy cannot be a basis for enhancing later punishment pointblank.

I think there's also an important practical consideration outlining Descamps which is to do what the government is proposing in this case really denies Mr. Smith the benefits for this reason.  The government has not produced the charging documents in this case.  There is a, what appears to be a printout, perhaps, from a police database indicating that Mr. Smith was initially charged with a violation of criminal sale in the third degree under 22039 sub one that the provision of New York Law that criminalizes sale of a narcotic.  He did not plead to that.  He pleaded -- and that's B felony.  He pleaded down to attempted criminal sale of a controlled substance in the fifth degree and an "E" felony not only as the punishment produced in the course of a plea but that fact was eliminated from the set of facts that Mr. Smith was necessarily admitting when he pleaded guilty.  And so to now come back and impose a punishment as though he had been convicted of the charge that was initially lodged, I think is unfair and deprives him of the benefit of his plea bargain.

27
FA1AASMIS                    Sentence

Let me also say this.  Your Honor conducts plea colloquies all the time and your Honor knows that judges' practices differ.  Some judges are very satisfied with bare bones allocution.  Judge Torres asks defendants for a rich factual allocution.  So the individual practices of judges will often determine how detailed an allocution is.  If the Court is going to look at factual allocutions and not elements, it is in a very large measure going to make future punishment depending on the proclivities of the individual judge who takes the plea. That's not a rational basis for imposing a significant sentencing -- particularly when they're facts as to which no one is fighting.

If we're taking -- I can give your Honor a brief example.  If there is a case where there is some dispute about a drug conspiracy prosecution, there is some dispute about the nature of the controlled substance issue you're right.  The government says clearly this defendant says, no, it's clearly that.  You can imagine as a defense lawyer why you wouldn't pick that matter.  More importantly, it doesn't matter.  So it really, it isn't just form over substance.  There are important constitutional considerations that underlay applications of categorical approach and there are important fairness consideration.  And they are both present in this case. Mr. Smith waived his jury trial rights only as to the elements of an attempted criminal sale in the fifth degree and he

28

FA1AASMIS                    Sentence

bargained for a reduction from the original charge.  So to sentence him now as he had pleaded to the top counts means why did he plead at all?  He's being deprived of the benefit of having plead.  So I don't think it elevates form over substance.  If your Honor is asking can your Honor consider this as a 3553 factor --

THE COURT:  I wasn't asking.  There are two others but I'd like to hear from the government on this, then I'll hear from you on the other two.

Mr. McKay, it's too much to say just start responding to Mr. Habib.  So let me try and focus you.  Again, I'll tell what you what I told him.  I have read the submission and I've read the case.  I'd like to talk to you, sir, about the cases that you have cited in support.  I would say they're not on all fours with this case.  And by "the cases" I'm talking about other submissions.  I'm not sure they are -- I'm not entirely sure they are on all threes with this case.  Coronado, I've discussed with Mr. Habib and I guess there is some question about whether these buckets make any difference.

The Gomez/Alvarez case, sort of the same thing.  The Ragasa case from the Ninth Circuit I found with no disrespect to the Court that there wasn't a lot of reason to help me understand what they are thinking about.  The Abbott case, I thought might have turned more on the nature of the punishment.  And then I guess Ruiz Giel again probably about the same.

29
FA1AASMIS                    Sentence

So I'm not sure those cases help me and I'm not sure that they help me to the exclusion the New York state cases that have been cited by the defense.  So could you speak to that.

MR. MCKAY:  Sure.  Let me start by clarifying one point which is that we don't concede that the specific type of controlled substance is not an element not under New York Law. Our position is that we don't need to parse New York State Law for the reasons Seth forth in Descamps.

I would also just say that with regard to the model jury instructions that we cite, it does say to specify the specific types of controlled substances.  And as a result in the vast majority of cases in New York where someone is using the model jury instruction, the jury will necessarily find that the controlled substance at issue.

If you look at the petitioner's reply brief in --

THE COURT:  Let me just stop you for a moment, sir.

On your pattern jury instruction argument, might it not be the case -- I'm just wondering what it means.  For you it means that this is an element of the offense but I also wondered whether it was done that way in order to allow counsel to sort of focus their summation on a particular thing as opposed to just the amorphous controlled substance context. What I'm saying is that I'm not sure that the only reason for the inclusion of the provision that you've cited to me is an

30

FA1AASMIS                    Sentence

order to demonstrate that it is an element of the offense.

MR. MCKAY:  I'm not sure that it is the only reason but I believe I think the salient point is the necessary result of that inclusion is that in the vast majority of cases the jury will be instructed as to a specific controlled substance and therefore they will necessary find a specific controlled substance.  So the issues about Sixth Amendment underpinnings of the categorical approach in the vast majority of cases just aren't going to be there.  So you can have a -- in which the defendant is caught with two different controlled substances and there's no unanimity instruction but that is not this case and that is not going to be the vast majority of cases.  And I think that's why in the reply brief in Malully you see there's an appendix that the petitioners have put together of all of the state model jury instructions to see which ones specify the controlled substance at issue.  And it's a vast, vast majority and New York is among that majority.  And that's why as a result the petition said you don't need to -- the likely result to responding to the government's concerns in that case about how the adverse result which was achieved would create this situation where states who move more quickly in criminalizing controlled substances under federal government are going to disqualify all of those convictions from career offender guidelines.

The answer was, well, those are probably going to be

31

FA1AASMIS                    Sentence

modified categorical approach cases.  Based on the New York

Model Jury Instructions and based on the ambiguity that you

identified in the New York state case law that's really sort of

Exhibit A as to why the majority in Descamps said we don't need

to parse state law because we don't what is relevant is not

this very slippery distinction between elements and means but

rather statutory phrases, things that are necessarily going to

be included in a jury instruction and plea allocution.

THE COURT:  You heard me speak with Mr. Habib about

what would be necessary to obtain a conviction under New York

state law for this fifth degree offense.  Is it your position,

sir, that if a defendant were simply to admit to the sale of a

controlled substance listed in the appropriate section that

that would be insufficient?

MR. MCKAY:  I don't know the answer under New York

Law, your Honor.  My suspicion is that again in the vast

majority of cases if someone allocuted to on October 30 I was

possessing a controlled substance the judge would say, well,

what controlled substance?  I would imagine how --

THE COURT:  Does, sir.  But doesn't that usually

happen because of the guidelines and statutory implications?

If there were a sentencing implications in a particular sense

such as a fifth degree sense, there were no sentencing

implications, why does it matter which one?

MR. MCKAY:  Well, your Honor, I think the reason is

FA1AASMIS                    Sentence

because a controlled substance to say that I possessed a controlled substance stating a legal conclusion, if you instruct the jury that they need to find someone that the defendant possessed a controlled substance with no further definition the jury is going to say what is the controlled substance?  You would give them a list of controlled substances that is in the New York Scheduler and the Federal Scheduler and instruct them on the things that qualify as a controlled substance.  So as to a plea allocution a jury instruction that says I had a controlled substance is essentially a legal conclusion.

THE COURT:  No, no.  You've got me thinking.  So let's just follow this through, sir.  In the jury context I can understand someone would want to reduce the possibility of jury instruction.  Let's focus on the plea context.  Assuming that the judge in that case understood what substances were on the schedule and what were not, why could not a defendant simply say I agreed to sell something that was listed in the schedule and leave it at that?

MR. MCKAY:  Your Honor, as a matter of New York State Law I don't have an answer for you.

THE COURT:  Fair enough.  I recognize that federal law and practice do not govern New York State but it is my understanding that I could accept a guilty plea if no one cared about the sentencing ramifications to a person who possesses

33

FA1AASMIS                    Sentence

with the intent to distribute or distributes a controlled substance.

MR. MCKAY:  So, your Honor, I think that that law is unsettled to be honest.  And I would point you to -- and I do this with reservation because I think our office may take the position in narcotics cases that that is the correct thing. You should look at a 2005 case by Judge lynch.  The name is escaping me at the moment but it's a long articulation on why he does need to know the type and can't just state it's a controlled substance.

THE COURT:  I'll put that to the side.  I'm sure Judge Lynch thought very hard about it.

MR. MCKAY:  And I should apologize because you started with questions about the case law and I avoided those for a moment but I would like to come back because I do think those cases -- your Honor, I think those cases are helpful to us. Obviously, they're different states, different courts of appeal but really the most helpful case for our position is not the cases that talk about drug statutes.  Although, those are sort of appealing but rather United States v. Trent, the Tenth Circuit case that analyzes the general conspiracy statute under Oklahoma law.  And that really in my view is the most thoughtful and best articulation of any of these cases.  What it is saying is that in essentially the position that we adopt our brief is that the distinction described -- and I'm sure

34

FAlAASMIS                    Sentence

your Honor's read this one -- is the generally Oklahoma conspiracy statute.

The question is whether the predicate offense was a controlled substance offense or not but that element of the offense, what the underlying crime was.  And the Court in Trent said, well, it's not about whether it's an element or a means of community element.  What is relevant in Descamps is the statuary phrases.  That's what the dialogue is when Justice Alito when he says if you look back at Shepherd and Taylor, these questions.  If you look back at Shepherd and Taylor these cases may not have actually been divisible statutes.  The burglary of a boat, a car, an automobile it's not actually clear under Massachusetts law whether a jury would have to be unanimous about that.  And what the majority says in Footnote Two of that case is we couldn't have to parse state law.  The question is what are the statutory phrases.  And if it is something that's necessarily going to be included in an indictment, in a plea allocution, something you are going to find in a Shepherd document, that's what's relevant for our purposes.  I think Trent is the best articulation.

THE COURT:  I understand the counterbalancing and the concern what I need confidence in is that this is something that a juror or jurors would have to agree to unanimously and so I'm aware of the situation.  Let me just use the 371 context where a jury has to agree that an overt act was committed but

35

FA1AASMIS                    Sentence

they don't have to agree which overt act was committed.  And I wondered if this was analogous to this where a jury hearing this case at trial would have to agree that Mr. Smith sold or agreed to sell or attempted to agree to sell, one of these items on the schedule but not which one.  That's the concern I have, sir.

MR. MCKAY:  Our position would be that the use of the term "element", element is a term of art.  In Richardson Shav sentence it is used to describe something that has to be agreed on unanimously.  That is not the sense in our view that it is used in the Descamps case.  In the Descamps case it is a convenient shorthand.  In the Trent case again you have to look at the context, the relevant shorthand for what the Court is really getting at is alternative statutory phrases.  And the reason why -- so two points about the sort of Sixth Amendment underpinnings is first of all Descamps, Taylor, Shepherd these are active cases whether or not the offense is a prejudiced offense affects the statutory penalties.  This happens to be a guidelines case.  And so while we typically use the categorical approach in guidelines cases I would say that the Sixth Amendment underpinnings are not quite as urgent in such a situation.  It's just relevant background.

THE COURT:  I think that's definitely correct just as a pure doctrinal matter.  Although, in cases like Ingram and Priestly from the Second Circuit, there are great concerns

36
FA1AASMIS                    Sentence

expressed about the career offender finding and the amount of carriage must have in making that time.  To the extent there is a difference, I would suggest that it's probably a very small one.

MR. MCKAY:  Agreed, your Honor.  What I would just say is that if your concern is one of unanimity, the concern should be ameliorated by the fact that in this case, in the vast majority of cases under New York Law the specific controlled substance will be charged to the jury will be asked about in the plea allocution and therefore it will be something that is necessarily found.  And so if you had a hypothetical case where the defendant pled to just the bare conclusion of the controlled substance or where the jury was instructed on two different controlled substance or wasn't given unanimity instruction, that would be a different case but this has not been the case.

THE COURT:  OK.  You've heard my form versus the substance question.  I do recognize that there are reasons and even good reasons for the Shepherd and Taylor -- I think what I'm understanding you to say is it would be an elevation to allow this particular conviction not to count where if New York had decided or because for whatever reason to list every element or every item on the schedule it might be then rendered a statue divisible.

MR. MCKAY:  That's right, your Honor.  And there are

37
FA1AASMIS                    Sentence

cases from the Second Circuit cited in our brief that say where different alternative elements are set out in separate statutory substantial sections that is a strong indication that in fact they are alternative elements. But in fact it's not a necessary indication. The name of the case that says that is cited in our brief that it doesn't have to be set forth in a list or in disjunctive sections in order to be disjunctive elements and a cross reference is sufficient. And in fact twice before Descamps concededly the Second Circuit has looked at the statutory cross references and found that the modified categorical approach applies. That Peers case and the Dixon v. Ashcroft case which looks at the unlawful imprisonment statute which included a defined term "restrained" which carried two separate meanings depending on the age of the person being restrained. In both those cases the Second Circuit said, look, this a cross reference.

THE COURT:  OK.  Perhaps overgeneralizing, I would suggest that the government's brief focuses a lot on cases from New York state courts and maybe as just the posit of such cases. But could you speak please to the New York state court decisions that have been identified by the defense in its submissions and separately could you speak to the two immigration cases that I was given in the defense's submission.

MR. MCKAY:  So I want to resist the premise that a state law inquiry was necessary.

38

FA1AASMIS                    Sentence

THE COURT:  I see.

MR. MCKAY:  I don't think it settles the case.  I'm happy to walk through and try to distinguish those cases as best I can.  But I think your Honor in your discussion with Mr. Habib distinguished that which is that certain cases the arguments were waived.  Others there are trial courts who's persuasive value is only what persuasive value give it genuinely, your Honor, if we have to get to New York state law the model jury instruction the way these cases are typically charged an pled out that is a very strong indication.

THE COURT:  OK.  Anything else so I do not have to ask you about?

(Recess)

THE COURT:  Back on the record.

MR. MCKAY:  Your Honor, no, I think that's all I have for you.

THE COURT:  OK.  What I'd like to do then I actually would like to address -- well, Mr. Habib, may wish to speak to reply.

MR. HABIB:  May I make three very brief points, your Honor?

THE COURT:  Yes.

MR. HABIB:  First with respect to the model jury instructions.  This is in the nature of the reply point so it will come as -- but I'm happy to submit papers on it.  As a

39

FA1AASMIS                    Sentence

matter of New York Law the model jury instructions are not

binding interpretations of state law.  More to the point in the

section entitled "Overview of Methodology" in criminal jury

instructions specifically say that a judge can integrate -- I'm

not reading from them.  A judge can integrate non elemental

factual allegations jury instructions.  The example that the

methodology gives is a burglary case.  So under New York Law

"burglary" means unlawful entry with an intent to commit a

crime inside.  It is back letter New York Law that the nature

of the crime that defendant intends to commit after making

unlawful entry is not an issue on that a jury need agree

unanimously.

There's a New York Court of Appeals case that says so.

And that case is People v. Macky 49 NY 2d 274 279.  However,

the Model Jury Instructions say that a judge can charge having

unlawfully entered the home of Mrs.~Smith the defendant

intended to commit an arson, intended to commit a larceny.  And

the reason is exactly the reason that your Honor has given,

jury charges are practical.  They're intended to assist the

jury in its deliberation, not to present sort of needless and

confusing abstractions.

The second point that I want to make relates to

whether or not this is an element on the way the jury must

agree unanimously and again I'll be brief.  It's the

government's burden to show you that the career offender

40

FA1AASMIS                    Sentence

enhancement applies.  And if the government can't tell you that unanimity is required they have not carried their burden.  And I'd ask your Honor to imagine a case, for example, where a defendant is charged.  Let's say a defendant has a bag of what can either be marijuana, real marijuana or synthetic marijuana. And those things are scheduled differently.  But as he looks at the bag he doesn't know.  Is it a defense for a defendant to come into court and to say, well, I have to knowingly possess that controlled substance but I didn't know what it was.  So that's not a defense in state court.  And if that's not true then it cannot be that the jury has to unanimously find that he knowingly possessed a particular scrolled substance opposed to a controlled substance.

Let me finally just address Descamps and Descamps Footnote Two briefly at the risk of wading into a debate. There are case on both sides.

To accept the government's position you have to believe that an eight/one majority of the Supreme Court in an opinion that talked again and again and again about the importance of elements, even described the elements and things on which a jury must agree unanimously talked about the textural reasons for that approach, talked about the constitutional reasons for that approach and practical and -- reasons for that approach reiterated that the Court had been doing it this way for 25 years, that that same court in a two

41
FA1AASMIS                    Sentence

sentence rejoinder to a solo dissent completely abandoned that approach and said it's -- you can could just look at the facts. That does not strike me as plausible reading of Descamps.

THE COURT:  Although your argument may be a bit of an overstatement but OK.

MR. HABIB:  That's the framework.  Let me see if I can be a little precise about Footnote Two.

THE COURT:  Thank you.

MR. HABIB:  First, Footnote Two preserves a means of little distinction.  It says, whatever the statute lists whether elements or means... which to me means the elements and means are not the same thing.  Otherwise, why would the Court have referred to me that way?  The end.  The Court confirms that the purpose of this inquiry, that is the consultation of Shepherd documents is to discern the elements at issue, not the means.  And I think in frankly the footnote is somewhat cryptic but I think the best gloss I would put on the opinion is similar to that proposed by Judge Kozinski in the Rendone dissent from denial over in (inaudible).

He says understand that majority to be saying this sometimes when you look at Shepherd documents that will preside a clue as to what the statuary elements are when the text of the statute itself is not sufficient to enable a sentencing court to distinguish between means and elements.  That is the Descamps majority believed that by consulting Shepherd

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

FA1AASMIS                    Sentence

documents it could assist the inquiry.  It could advance the inquiry and separating elements from means.

I think that as a matter of fact that is not always going to be the case, right?  It is not always the case that a charging document lists only elements.  It may list things beyond elements.  It is not only the case that plea colloquy will involve the admission to things that I think that are only elements.  Sometimes a plea colloquy will be richer.

That's my best sort of effort to decipher what Footnote Two is saying but the fundamental point is this. The -- is absolutely un-waiving in its commitment to a focus on elements and describes the elements and things the jury must find beyond a reasonable doubt.  It's difficult to reconcile the government's position with what is to me been very clear to the--

THE COURT:  Shall we move on, sir?

MR. HABIB:  Yes.  Thank you.

THE COURT:  The in connection with enhancement, it is your position that is does not apply?  Again, understand that I've read everything you've given me and I understand the cases on this issue.  Tell me anything else you'd like me to know about that.

MR. HABIB:  No.  Briefly, your Honor, the jury acquitted Mr. Smith of this precise factual allegation with good reason.  The government's proof was limited to generic

43

FA1AASMIS                    Sentence

expert testimony that occupied a very small portion of the trial. There was no firsthand evidence that the gun was used in connection with drug distribution. I think both the jury's verdict is entitled to respect at this point and the basis for the jury's verdict.

THE COURT: I'm not going to identify what the basis for the jury's verdict was.

Let me ask you this, sir. Under 3661 I may consider many things in connection with sentencing. In making this determination am I bound by simply the trial record or may I consider other information? And if the latter, is there any additional information that sheds light on this issue?

MR. HABIB: Your Honor is required to guidelines enhancement. So your Honor is required to find it by a preponderance of the evidence the evidence and due process clause requires that the evidence on which your Honor relies be reliable. Is there a particular piece of evidence you were considering?

THE COURT: No, sir. I just want to make sure. I think I'm permitted to consider evidence outside the trial record. I don't believe there's any additional evidence but I'm asking the question.

MR. HABIB: I don't either. I would say to the extent that it is outside the trial record the Court should take into consideration the fact that Mr. Smith hadn't been afforded an

44

FA1AASMIS                    Sentence

opportunity to contest it.  So that to the extent that your Honor is going to rely on extra record information --

THE COURT:  I can't identify any for you.

MR. HABIB:  I think it's a general proposition, yes, but subject to due process and not confrontation because it doesn't apply but confrontation principles.

THE COURT:  Would you like to speak to the last of the challenges with respect to the instruction enhancement?  Sir, if I my may be so bold, I found our argument to be a little too clever by half.  So, perhaps, you want to restate it for me. Why this statement regarding his possession of the crack cocaine on his person or in his hand, I appreciate that it might not have been -- well, I'm not sure I understand your argument but my reaction to it was it seemed to me to be the genesis of the hearing and that the hearing was going to -- which never happened -- but it was going to be a hearing on the issue whether the public safety exception applied.  So it seemed to me to speak to the issues as to what the officer was observing when he saw Mr. Smith clinch his fist and not open it.  And it therefore to me gave the basis for the officers' belief that there might be something dangerous which prompted the question which then prompted the suppression motion.

So again, I believe you said to me that his denial he possessed crack even if believed would not have impacted the disposition of the suppression motion and that's where I think

45
FA1AASMIS                    Sentence

again too clever by half because it got the hearing until the government decided it wasn't going to use the statements. That's not the use, the way I'm to analyze it though.  But if I believed it it would to my mind have vitiated the public safety exception because it would have perhaps belied or at least undercut the office's testimony that he was trying to swallow something, he had something in his hand he was trying to swallow.  So could you speak to that, sir, please.

THE COURT:  MR. HABIB:  Yes.  The argument is straightforward and I can put it most simply this way.  Imagine that statement had not been included in Mr. Smith's affidavit.  That affidavit would have been sufficient to trigger an evidentiary hearing and it would have sufficed that juncture to negate the facts being asserting on which the government based its application or invocation of the public safety section.  That's another way of saying it's not material.  It could have been deleted from the affidavit with no impact on the Court's disposition of the motion.

THE COURT:  OK.  Thank you.  Yet it was said, sir, in that affidavit.

MR. HABIB:  Well, your Honor, if your Honor can step back to that point in the trial, if you will recall from the final pretrial conference, there was some discussion as to what defense theory Mr. Smith was going to pursue, whether he was going pursue a theory that he did not possess the crack period

46

FA1AASMIS                    Sentence

or whether he was going to deny intent.  And your Honor, of course, ruled that if he elected door number two his prior convictions were coming in under Rule 404(b).  So there was no question of what course the defense was going to choose.  Surely we didn't need to do it this way but it was at least in some way a form of writing -- as which course we were elected.

THE COURT:  OK.  Thank you.  Mr. McKay, I'll hear from you beginning with the, in connection with enhancement, sir.

MR. MCKAY:  Your Honor, it's settled that law that if you find by preponderance you can find differently than the jury's verdict which is a different standard.  Having presided over the trial you are in far better position than I but I would submit that the expert testimony provided about the connection between gun and drugs, the testimony of the other officers and the common sense from the date you trial evidence got over that preponderance of the evidence part.

THE COURT:  OK.  Could you speak then to the third dispute.

MR. MCKAY:  Yes, your Honor.  So on the obstruction --

THE COURT:  Let me ask does it matter that I never held a hearing?  Does it matter that the government withdrew its decision or changed its decision?

MR. MCKAY:  I don't think so, your Honor, because the fact that this materially false affidavit was filed necessitated a hearing and the fact that the government

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

47

FA1AASMIS                    Sentence

withdrew.  It would have otherwise been able to use the statements if it hadn't been the decision that the game is not worth the candle.  The fact is the necessitated hearing with the result, potential intended result of the government would decide not to use these statement.  So it actually did make a significant difference about what the evidence ended up looking like at trial.  For that reason I think it does matter.  Excuse me.  Does not matter that the hearing does not occur.

THE COURT:  It does not matter the statement was made?

MR. MCKAY:  Correct.

THE COURT:  What did you follow on that?

MR. MCKAY:  As to your -- I think you accurately captured our description of the statement about the not having the crack that absolutely, if credited, would have tended to undercut of officer's description that there was a struggle, they saw him hiding something in his hand.  If there was nothing to hide he might not have done those things.

I would say that there is actually a second basis for you to rule in our favor for this.  It is not just the statement about the crack.  It is demonstratively false.  But as to statements about the struggle that there was no struggle, that I did not try to hide something in my hand, those statements are, I don't think the defense would dispute that those were material to the public safety exception.

THE COURT:  Let me stop you for a moment, sir.  What

48
FA1AASMIS                    Sentence

is the government identifying as the basis for obstruction enhancement, the entirety of paragraph four or the last statement in it?

MR. MCKAY:  Both, your Honor.  I think both the statement about the struggle and the statements about the crack are both material false statements.

THE COURT:  I see.  And for the same reason because they go to the validity of the government's implication --

MR. MCKAY:  So I think that the statements about the struggle are even more material than the statement about the crack but I think they are both material and they are both false.

THE COURT:  All right.  I just want to make sure I understand it.  So page 15 of your submission what you say to me is the last of these statements which the possession of crack cocaine is demonstratively false -- I see and you're saying that I should discern from the jury's verdict that they accepted the police officer's statements regarding the struggle.

MR. MCKAY:  In fact, two things.  First you can discern from the jury's verdict if they accepted the officer's testimony that the defendant did in fact have the crack they also accepted the testimony that he tried to hide something. But even putting aside the jury's verdict, here you are the fact finder.

49

FA1AASMIS                    Sentence

Finally, you heard the evidence and you heard the officer's testimony.  you can credit that testimony that there was in fact a struggle, that he did in fact try to pull his fist up to his mouth and tried to hide something in his fist. And based on that testimony you can find that those statements were also false.

THE COURT:  All right.  Mr. McKay, I forgot to ask you something.  My recollection proceedings pretrial was that the government sought evidence, sought the introduction of a particular telephone call that either was placed by the mother of one of the defendant's children or the sister of that woman regarding whether or not it was Mr. Smith's intent to return with a gun, whether there had been previous either threats or violence and whether he was going to return.  And I thought I understood that in part the government's theory at trial was that the gun -- he went back to get the gun and then came back and then beat someone with the gun.

I want to understand first of all whether I'm remembering this correctly and second of all, whether that in any way detracts from the minds statements you are now making that the gun was used in connection with the narcotics trapping.  I do believe that the trial, former trial assistant is in the room if you need to speak to him about that but I want to make sure that I'm reconciling or proceeding with the government's position.

50

FA1AASMIS                    Sentence

MR. MCKAY:  Perhaps I could have a moment, your Honor?

THE COURT:  Certainly.

(Pause)

MR. MCKAY:  Having discussed with Mr. Tracer I believe there were two 911 calls that referenced gun, one that came into evidence, one that was kept out.  We can't recall specifically whether the reference to getting it to bring it back was the call that was kept out or not or so I don't have an affirmative answer for you but I think that it probably was the one that was kept out.  But regardless, I think that the larger point would be that I don't think even if that were in the record or otherwise, it undermines the point because, frankly, you can use a gun for more than one purpose.  You can use a gun to assault someone.  You can also use it in furtherance of drug dealing.  So the notion that it was used for some other purpose doesn't undercut the purpose that we think it was used for here.

THE COURT:  Thank you.  Anything else you would like to tell me about the guidelines dispute the parties have had?

MR. MCKAY:  No, your Honor.

THE COURT:  Mr. Habib, anything else you would like to tell me about the guidelines disputes.  I know as well as well, sir, there is a question about 5G1.3 and whether or not a certain period of time should be credited or not.  I don't need argument on that issue.  I don't.

51

FA1AASMIS                    Sentence

MR. HABIB:  Then, no, I have nothing to add.

THE COURT:  All right.  Inasmuch as we have been going for about an hour and 20 minutes I would like to take a few minutes break to just get my notes together with respect to the guideline issues.  If the parties thereafter when I've made my decision need more time they'll tell me and we'll take another break and Mr. Smith will understand this is all in service of getting everything correct but I just want that take a break, so I will.  It should be for about five minutes.  Thank you very much.

(Recess)

THE COURT:  Thank you very much for your patience. Please be seated.

Let me begin this section with sort of going to a nonlawyer for a moment.  I really feel compelled to compliment if not praise all of the attorneys involved in this case for the work that they've done.  This has been extremely well briefed and extremely well argued as was the trial and I'm grateful for that.  I don't see that in all of my cases.  I do see it, I should say in all cases where the U.S. Attorney's Office is involved and where the Federal Defenders are involved, so I thank you for that.

These are not easy issues.  And at one point earlier in this process several weeks ago I began to look back at cases like Crosby, like Duffy, like Certified Environmental Service.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

52

FA1AASMIS                   Sentence

The line of cases that talk about the fact that in certain circumstances judges don't have to decide very complicated guidelines issues. And I know those cases and I think those cases and are some times taken to extremes by judges who sometimes want to punt rather than deciding things. So I will tell you for me these are very complicated legal issues. And yet I think given the impact that it may have on the sentence I need to decide and so I'm not going to punt. I'm going to decide it with the proviso I'll speak about a little bit later on.

So the issue I don't think I need to go into great detail about the categorical analysis or the modified the parties are aware of it. The real issue is what does Descamps mean for me now and what do "element" mean? And following or paraphrasing Justice Scalia and Whitman v. American Trucking it would seem to me that the Supreme Court would not hide element in -- if elements was supposed to mean something other than what I naturally understood it to mean, they would not have put that in a small footnote and thereby have it undercut the total of the opinion. So I do think that I need to look at state law and I do think the focus here is on what a jury would need to find unanimously in order to convict.

And so looking at the state law cases and recognizing as I hope we all do that there just aren't that many for whatever reason I cannot comfortably say that the particular

53

FA1AASMIS                    Sentence

substance was an element of the offense as opposed to a

controlled substance.  Therefore, I don't believe that I may

consider what is obviously the transcript at which Mr. Smith

identifies it.  So as Mr. Habib is letting his client know, I'm

not finding that he is subject to being designated as a career

offender.  I'm not finding on the facts of these cases that the

fifth degree offense is something that is divisible and

therefore something for which I may properly consider a

material such as the plea allocution.

Now, in part that's because I just don't have the

clarity that I need from New York state courts.  I don't

believe I have the ability to -- New York state Court of

Appeals.  I am not going to do it here.  But I want to make

something else clear lest the government think I have not

thought of it.

The affect on the guidelines calculations here is

significant and I'm uncomfortable.  Not only am I uncomfortable

having such a significant jump in the guidelines based on my

own inability to read the tea leaves of New York state cases

but I also in looking at what the guidelines would be I would

very likely, in fact, I would vary downwards.  So even if I'm

wrong on the career offender provision I would come out with a

sentence, I'd at least begin with the same benchmarks that I'm

going to ultimately begin with.  So I want to make that clear.

It is -- I must tell the parties a very, very close

54

FA1AASMIS                Sentence

question.  I do understand the decisions of other circuits although I think the statutes might be somewhat different.  It is significant to me the way that New York structures its various controlled criminal sale of a controlled substance statutes the way they have them.  I'm not sure what to make of them but it seems to me the fifth degree may just be a catchall provision for which it might not matter punishment-wise and therefore might not matter unanimity-wise which controlled substance it is.  So that the absence of clarity in New York case law, the fact that I believe I need some clarity in New York case law it is what's causing me at this point to find that the career offender enhancement does not apply.  But that leaves us with two other issues and the first is the in connection with one.  So let me speak to that please.

The defense as has asked me to look at and respect the jury's verdict and the government has asked me I believe also to look at and respect to the jury's verdict but to recognize that I have the ability to make findings under the preponderance standard.

The Second Circuit has adopted the Seventh Circuit's approach to this particular guidelines enhancement which is 2K2.1B6B.  And what the Second Circuit has said in United States v. Surgeon is that the in connection with standard was met so as long as the government proves by a preponderance of evidence that the firearm served some purpose with respect to

55

FA1AASMIS                    Sentence

the felonious conduct.  Where the firearm's presence is merely incidental to that conduct the requirement was not met.

I'm also aware that based on cases like United States v. Bond I may consider acquitting conduct at sentencing and I have taken account of the verdict in determining how much weight to give the individual piece of evidence in making a preponderance assessment and ultimately considering the trial of instrument in its total.  I find the connection has been proven by a preponderance of the evidence.

The jury found that the evidence supported that Mr. Smith possessed crack cocaine with the intent to distribute it and that he possessed a firearm.  So the issue here is whether he possessed a firearm in connection with his narcotics trafficking.  I understood that the jury found that the government had failed to meet its burden beyond a reasonable doubt but under a preponderance standard I think that sufficient evidence was presented at trial.  I have Detective Hernandez's expert testimony.  I have testimony for one or more witnesses that the area in which the incident took place has a high incidence of drug crimes.  And I have the common sense understanding that an individual who carries a loaded firearm with him at the same time that he is distributing amounts of crack cocaine in an area known for narcotics trafficking is more likely than not caring that firearm in connection with the narcotic trafficking and not for --

56

FA1AASMIS                    Sentence

it was called to my attention by the defense that Count One was found to be improbable.  I do understand that. What I don't know and what I'm not going to decide at this point is whether that means that the possessor of the gun didn't know it was inoperable or that it was rendered inoperable after the possession as far as when it was thrown. Here, the guidelines itself doesn't require operability nor does the statue and I can think of reasons why one might use an inoperable gun for protection.  It also is significant to me that the gun was loaded.  So if it were truly inoperable at the time it seems odd to me that it would be loaded.

In any event, I find that the gun was -- so I want to then proceed to the third enhancement or not, the obstruction enhancement.

The defense has suggested that it is not material and the government has suggested that it is.  The guideline for obstruction which is 3C1.1 finds that if the defendant willfully obstructed, impeded or attempted to obstruct or impede administration of justice with respect to the investigation prosecution or sentencing of the instant offense conviction and the obstructive conduct related to defendant's offense and conviction and any relevant conduct or closely related offense I'm to increase the offense two levels.

Note four and six provide information to me about what is material.  And looking at that I think the most recent

57

FA1AASMIS                    Sentence

Second Circuit case on the issue, United States v. Pena from 2014 and what is it instructs me is that before I base this enhancement on the giving of perjured testimony I must find that the defendant willfully and materially committed a perjury which is the intentional giving of false testimony as to a material matter.

In other words, before imposing the adjustment I must find that the defendant consciously acted with the purpose of obstructing justice.  The intent to obstruct must be unambiguous, an enhancement may not be imposed if the false memory may have been the result of confusion, mistake -- false testimony -- try it again.

The enhancement may not be imposed if the false testimony may have been as a result of confusion, mistake or false memory.  Some of the principle cases -- I've just mentioned, the United States v. Dunnegan, United States v. Lynscum and United States v. Abdello.

I've looked at all of those cases and after reviewing the transcript in this case and reminding myself of the trial proceedings over which I presided I find that the statements contained in the fourth paragraph of the declaration were material and materially false for the reasons suggested by the government.

These statements were made in order to undercut the argument that the public exception applied.  And so making it

58

FA1AASMIS                    Sentence

was clearly a demonstrative false statement that Mr. Smith had nothing on his person or in his hand.  That was significant because that was the proffered reason for the struggle with law enforcement.  I also having observed the witnesses at trial credit the testimony of those officers who testified regarding the struggle between the defendant and officers at the precinct house.  And all of this was presented specifically to contradict the government's factual basis and legal basis for invoking the public safety exception and created a factual dispute --

It was all designed to undercut the officers.  It was all designed to have me find that the statement should be suppressed.  As it happened the government elected not to use it.  I don't think that's the inquiry for me.  Whether it was successful or not is not what I'm supposed to be looking at. The question is what was it designed to do and it did what is designed to.  I'm therefore finding the statements contained in particularly the last sentence but I think all of that paragraph were willfully and materially false when made.  I find that they are willfully -- therefore that Mr. Smith willfully and materially committed perjury which is the intentional giving of false testimony as to a material matter.

I just want to mention for a moment there are two principle decisions in this area that I think one need to the walk the line between and that is the Lynscum and Abdello

59
FA1AASMIS                 Sentence

decision and interplay between those two that was discussed last year by the Second Circuit Pena decision.  Looking at the three cases I believe that the situation with which I'm confronted with is not what the Court was concerned about in Abdello and by extension Pena and closer to Lynscum.  These statements do not necessarily have the factual details of Lynscum but they're a fact as to which Mr. Smith simply could not have made an honest mistake or had a misperception.

So all of these statements in paragraph four were important to me as the person deciding whether to have a hearing and ultimately whether the public safety exception applied.  Having found that they were demonstratively false and willfully made, I'm going to find that that particular provision applies.

So my calculation of the guidelines are as follows and I understand that the parties may dispute the ultimate findings that I have made but really what I'm asking you is whether my position is correct.  I have a base offense level of 20.  Under 2K2.1A4 I have a two-level enhancement for the firearm being stolen.  Under 2K2.1B4 I have a four-level enhancement for being in connection with the commission of another offense.  2K2.1B6D I have a two-level enhancement for obstruction under 3C11.  For me that works out to be an adjusted offense level of 28 and I have a criminal history category of six.  So I believe the range, resulting range could be 140 to 175 months.

60

FA1AASMIS                    Sentence

Mr. McKay, have I calculated the guidelines incorrectly, sir?

MR. MCKAY:  You've calculated them correctly, your Honor.

THE COURT:  All right.  Thank you.

Mr. Habib or Mr. Marvinny?

MR. HABIB:  Yes, your Honor.

THE COURT:  All right.  I'm ready to proceed to the next phase which is the statements from the parties with respect to sentencing.  If the parties for whatever reason need time please let me know but I'm ready to go forward.

MR. HABIB:  I'm ready, your Honor.

THE COURT:  All right.  Thank you.  Will Mr. Marvinny speak at all?

MR. HABIB:  If he wants to.

THE COURT:  Perhaps later.  That's fine.  You both represent your client well.  So that's find.  Actually, I think I'll begin with Mr. McKay so I can do that.

Do you wish to add anything?

MR. MCKAY:  Briefly, your Honor.

THE COURT:  Yes, sir.

MR. MCKAY:  The defendant here was convicted of two very serious crimes.  He had a loaded weapon in a residential setting.  He threw it into someone's backyard where it lay unattended for a few days.  He led the officers on a dangerous

61
FA1AASMIS                    Sentence

foot chase through that neighborhood and struggled with them. When apprehended and once again when back at the precinct. The suggestion that the inoperability of the gun somehow mitigates the seriousness of that offense is I think unpersuasive for some of the reasons you mentioned a minute ago in discussing the guidelines.

Your Honor, although drugs including crack cocaine as set forth in the defendant's submission has taken the toll on his life he nevertheless possessed crack cocaine with intent to sell it necessarily meaning that others subjected to the same devastating effects. For those crimes a very serious sentence is warranted.

I also think that specific deterrence is very heavy here, as well as the need to protect the public from further crimes of the defendant. I won't belabor the point because I think the PSR and criminal history record speaks volumes but the frequency and number and made you those convictions illustrate even though the defendant is not a career offender under the guidelines as you've described he is a career offender under the ordinary sense of the terms. So for those reasons we respectfully submit a guideline sentence is appropriate.

THE COURT: Mr. McKay, I'm going to ask you to responded to one issue. One might argue that looking at a presentence report the instant offense of conviction might be

62
FA1AASMIS                    Sentence

on the more less serious continuum of the offense which he has been charged and convicted. Perhaps I'm wrong. But this would be, are you asking for a guidelines sentence, sir?

MR. MCKAY: Well, yes, your Honor, we're asking for a guidelines sentence under the calculation. Obviously, the guidelines are now different but regardless of where you place the guidelines, your Honor, we think a very significant sentence is warranted. Although, I would agree with you that there are other crimes in the defendant's past which were more severe than the instant offenses. I think when I counted up this was maybe the 20th and 21st criminal conviction the defendant had sustained. At some point there needs to be a marginally more significant sentence to promote respect for the law and to promote both specific and general deterrence. Obviously, the sentences the defendant has had in the past have not sufficiently deterred him from criminal conduct. So for that reason we think that a very significant sentence is warranted.

THE COURT: That you, sir. Mr. Habib.

MR. HABIB: Thank you, your Honor.

Before I begin I do want to introduce by name the members of Mr. Smith's family who are present in court today. His long time partner and mother of his children, Marita Alvarado; his mother, Rose West, both of them have submitted letters to the Court; his uncle James Flemming and a friend of

63

FA1AASMIS                 Sentence

the family Marissa Vega; Mr. Smith's father is not able to be here today unfortunately because he today begins a course of radiation therapy.

In a different context the Supreme Court has talked about mitigation of even the most serious offense and arising from the court called the diverse -- these of human kind of what the Court is confronted, a person whose life exhibits those parameters.  Mr. Smith is 33 years old.  He is a United States citizen.  And whatever his rap sheet reflects about him he is a man who is devoted to a mother with significant health issues and a devoted father to three young children.  Your Honor has letters from Mr. Smith's mother and from Ms. Alvarado to that effect.

Without repeating my sentencing submission I want to give your Honor a sense of how Mr. Smith comes to be before you today.  He grew up in the 1980s in a neighborhood, worked hard but was working poor, in a neighborhood that was decimated by the crack epidemic.  At an early point in his education Mr. Smith was placed in the special education class.

The evaluation you have from Dr. Paradis reflected today Mr. Smith's word reading ability is second grade level and his reading comprehension is at a fourth grade level. School was an intimidating and difficult experience for Mr. Smith.  And I think quite honestly the story of how he came to drop out of school is not -- there is no dramatic event but

64

FA1AASMIS                    Sentence

it's evidence of what happens when people fall through the cracks.  Mr. Smith injured his leg in a pick-up football game. He was out of school for a long time.  While recovering from that injury he was tutored at home but by the time he got back classes had pass him by.  School had passed him by and he dropped out.  It was a mistake but I just submitted it's one piece in the picture that brings him to where he is today.

So Mr. Smith like many young people with limited opportunities, limited economic opportunities, limited educational opportunities, made poor choices as a very young man.  At a time when the Supreme Court has told us and social science literature tells you and biology tells us the decision we making are not considered.  They're made without an understanding of consequences.  But unfortunately in Mr. Smith's case they set his life on a particular course.

So I think it's worth noting for your Honor Mr. Smith per the PSR began using drugs as a teen-ager.  He sustained his first criminal conviction as a teenager.  I'd like this Court to consider when we examine the trajectory of Mr. Smith's life. It starts and is in many ways I won't say foreordained but it weighs heavily on the future track of his life that he made poor decisions as a teenager.

Something else that happened to Mr. Smith as a teenager when he was about 17 years old and that was a positive.  He met Ms. Alvarado, a friend from the neighborhood

65

FA1AASMIS                    Sentence

who is his rock, frankly.  She, I think your Honor recalls, has been at every court appearance.  She was here for the trial. She has submitted a letter to the Court.  She is in constant communication with me and Mr. Smith.  She is devoted to him. And that speaks to the sort of person he is, perceived to be by those who know him best.  Ms. Alvarado tells the Court that he is a caring father to the couples' two children, Gemma and Taylor.  He provides for them when he can.  He watches then when Ms. Alvarado is at work he is there for them and whatever else can be said about him, that must be said about him too.

I think Mr. Smith's life as you know has some purpose. In addition to drug use as a teenager he's also the victim of gun violence as a teen-ager, struck by a bullet while attending a block party.  He was a bystander.  So it's at least worth noting that before committing the offenses and conviction in this case before he has been adjudged convicted of them, he was a victim himself.

As the Court is aware, Mr. Smith beginning in 2004 served a substantial prison term.  It was a six year term imposed for robbery conviction.  As your Honor notes, the instant conduct is less serious than that.  And so whatever the benefits of an incremental sentence and we've asked for a sentence that is incrementally larger than that six year term, this Court can also consider the conduct for which Mr. Smith is being sentenced today as your Honor has directly indicated is

66
FA1AASMIS                    Sentence

not quite so severe.

Incarceration is a difficult burden for anyone to carry. It was difficult for Mr. Smith. While he was incarcerated his wife, Meisha Todd, delivered their stillborn child. The relationship ended while Mr. Smith was incarcerated. And in 2008 while Mr. Smith was at Elmira depressed and abandoned he tried to hang himself in his cell. It was at that point that he began receiving mental health treatment. He was diagnosed with depression. He was treated with therapy and medication. Dr. Paradis tells you today Mr. Smith continues to battle with depression. And I can tell the Court that in the last couple months Mr. Smith's mood and his attitude have become markedly sad. I think his family members tell Dr. Paradis the same thing.

He was in the SHU for three months including the period surrounding the trial. We are beginning to appreciate now the effects of solitary confinement on mental health, particularly, on the mental health of people who come to that situation damaged and we're beginning to understand that visit's quantum of punishment more severe than ordinary incarceration.

Mr. Smith is released and he begins to do good things. It's not easier for someone exiting a long prison term to work particularly someone who does not have a high school education, but Mr. Smith tries. He works as a janitor in the building

67
FA1AASMIS                    Sentence

where his parents live.  He mops.  He sweeps floors.  He does handyman work.  He also assists his father.  His father is sort of a jack-of-all-trades who does repair jobs, makes deliveries on a truck and Mr. Smith assists him in that respect.  They're not on the book jobs.  But candidly they're the jobs that are available to someone in Mr. Smith's position and he does what he can with those opportunities.  Mr. Smith, while he is at liberty in the community also begins to receive some mental health counseling but that treatment is discontinued.

So as Mr. Smith comes to June of 2014 he has been untreated and unmedicated for about two years.  He is self-medicating with marijuana and a period of really intense emotional turmoil for him involving the birth of his third child, Major, and see what the Court can infer from the trial evidence what a tumultuous relationship with one of the people involved in this defendant's -- Major's mother.

So I would ask the Court to consider among the 3553 factors that Mr. Smith put simply is a person who has not had the opportunities that everyone in this world has had and many of the bad choices he makes later in life flow from a set of bad choices he made early on.

We think the sentencing guideline range is far greater than necessary to address the statuary sentencing objectives.  We think a substantial downward variance is warranted.  We simply ask the Court to consider that whatever else might be

68
FA1AASMIS                    Sentence

said about him, Mr. Smith is a loving son and a loving father. As ms. Alvarado has told the Court, his children want him back in their lives as soon as possible.

THE COURT:  Before you sit, sir, one of the many factors is protection of the community.  And there are crimes that really hurt the individual he perpetrates.  Mr. Smith does have what I hope is what I think people would concede is a rather substantial criminal history.  And what confidence can I have that bearing downward would not result in something bad happening to the community upon his release because the track record is not great?

MR. HABIB:  I would say a few things, your Honor.  The vast majority of Mr. Smith's prior criminal history occurs before 2005.  That's because he was detained in 2004 and incarcerated for a period of about six years in connection with this robbery.  That is to say all that conduct occurs before age 22.  Just as we know from biology and social science that juveniles are poor decision makers.  We also know that recidivism declines as people age.  I think looking at a sentence where Mr. Smith is close to 40 at the time he is released, so the difference between what a 22-year-old will do and what a 40-year-old will do is pretty significant.  As a general and specific proposition that this Court can consider that a vast majority of his criminal history Mr. Smith has not been treated for mental illness and for substance abuse.

69
FA1AASMIS                    Sentence

I can tell you that Mr. Smith is sincere about his desire to receive such treatment. And when the last I saw him at MCC he handed up to me with some pride a certificate that he had received indicating that he completed the MCC 40 hour drug abuse education course. That is a way of demonstrating to the Court that he is sincere. He understands the harm that substance abuse has done to his life and he's committed to change that I can also represent that our office maintains contact with your clients over time. We're in it for the long haul with your clients. And I know from my cases, from other cases that I've litigated that we can provide effective interventions. We can assist the probation department in providing effective interventions following release from incarceration. We can assist in placing people in mental health treatment. We can assist in placing people in residential or nonresidential substance abuse programs. Those things mitigate the risk of recidivism. So I guess the short answer is think about the fact that mental illness and substance abuse attend many of Mr. Smith's prior convictions and think about the prospects for addressing those group causes when you think about recidivism.

THE COURT: It also appears that there may have been an escalation in violence because with the exception of any one criminal possession of a weapon, we then have the robbery charge and then in 2011 the assault charge. So I'm concerned

70

FA1AASMIS                  Sentence

that it's progressing from the crimes of one who may or may not be in the throws of addiction to someone who is engaging in violence.

MR. HABIB:  So, I do want to -- with respect to the robbery, your Honor, again let me put it this way.  Notes are two -- in a long life the robbery is based on conduct that occurred in January of 2004, more than 11 years ago.  And the assault, I would say these are two data points.  The robbery is quite an open old conviction.  The assault is one instance in 2011 which is several years ago.  There are thankfully in this case you don't have serious injuries resulting from the violent conduct.  But if you are asking me can we -- there's is a some history violence, we can't and we won't.  I'm just suggesting that your Honor can take into account the need for incapacitation but your Honor can also take into account the intervention.

THE COURT:  OK.  Anything else, sir?

MR. HABIB:  No, your Honor.

THE COURT:  Thank you very much.

Mr. Smith, if you'd like to speak to me in connection with your sentence I'll be glad to hear from you now, sir.

THE DEFENDANT:  Yes, your Honor.

THE COURT:  He is welcome to sit down.  Just pull the microphone closer.

THE DEFENDANT:  From the time of my trial and when I

got convicted I was thinking what can I say to you.  I don't even know what to say.

THE COURT:  Do you want to take a few minutes or would you rather just rely on everything your counsel said on your behalf?  I can wait, sir, if you want to take some time and think about it.

THE DEFENDANT:  I know my record might look bad -- the thing, I did it.  When I was young, I'm not a bad person.  And I do got a good family out there that do need me.  My mom and my kids' mother.  This situation right here was never supposed to even happen, man.  I never was supposed to find myself back in jail or going through this no more.  The only thing I wanted to do was be out there and take care of my mother and my kids.  I don't even know how this even happened to me.  I do like to apologize for anything but I really do need to get back to my family and I apologize for disrespecting your Court.

THE COURT:  You haven't, sir.  You haven't.

THE DEFENDANT:  (Inaudible).  But I'm not a bad person and I know my record speaks different of me.  I made some mistakes in my life and did things in my life that I took full responsibility for but this right here this wasn't my fault.  So just like to get back out there and take care of my moms and my father.  They need me right now.  I know they need me right now.  I apologize.

THE COURT:  Is there anything else, sir?

72

FA1AASMIS                    Sentence

THE DEFENDANT:  No, ma'am.

THE COURT:  Mr. Marvinny, anything else?

MR. MARVINNY:  No, your Honor.

THE COURT:  OK.  Thank you.

Mr. Smith, as I noted to you at the beginning of this proceeding I needed to make some calculation of the guidelines. I've now done that but I also now need to decide your sentence because I don't come out here with a preconceived notion of what the sentence should be because otherwise why would we have this proceeding?  This proceeding matters.  What you say to me matters.  I need a few moments to gather together my thoughts for your sentence, so I'm going to ask for your patience, sir.

THE DEFENDANT:  Yes, ma'am.

THE COURT:  All right.

(Pause)

THE COURT:  All right.  Thank you very much for your patience.  What I'm going to do is describe the sentence that I intend to impose but the attorneys will have an opportunity in imposing the sentence I have considered as I must certain factors set forth by Congress in Section 3553(A) of Title 18 of the United States Code.  Several of these factors were referenced by the parties today and they include such things as the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence imposed to reflect the seriousness of the offense, to promote

73
FA1AASMIS                    Sentence

respect for the law, to provide a just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant and to provide the defendant with needed educational and vocational training, medical care or other treatment.

I must consider the sentencing guidelines and applicable a policy statements. I must consider the need to avoid unwarranted sentence disparities among similarly situated defendants. And in some cases but not this one, I need to consider the need to provide restitution to the victims. I've already done the guidelines calculations in this case so I won't restate them here. But what that leaves us with is a range beginning with 140 months. Let me get the numbers again. 140 to 175 months.

The government would ideally like a sentence with a criminal history career offender range but otherwise they're asking for a sentence within the guidelines range. The defense is asking for a downward variance. I am presuming without knowing that it is to the level that they've suggested in their sentencing submission to me. I'm going to vary downward slightly from this figure. I'm going to impose a term of 120 months imprisonment. Let me explain to you why.

Let's begin with the positive. Positives are largely defined by Mr. Smiths's family in the submissions that they've made to me which I've read very carefully. It is significant

74

FA1AASMIS                Sentence

to me that they have come to these court proceedings.  It is significant to me that these individuals have written.  I have thought as well about Dr. Paradis's report and her connection between the educational deficits and difficulties that Mr. Smith has had and the reason he's had for committing some of this conduct.  There has been some employment history, although, I agree it is not verifiable and a little bit episodic and I'll note that in most of his appearances before me Mr. Smith ahs been polite and attentive and pleasant.  I do see a difference from the man I saw when that case begun.  You are thinner.  And you are sadder than you were when I first met you.  And I'm not saying I don't understand why.  I'm simply noting the change that's happened to you during the time of your incarceration.  The issue for me is that there is a disconnect between these facts and the rather extraordinary criminal record that Mr. Smith has amassed.  They are not insubstantial or petty offenses.  They were at an earlier time in his life but one could argue that in part it may have been because he was incapacitated by a longer jail sentence.

        I think in the common understanding of the term Mr. Smith might be described as a career offender.  But I do understand and I'm still abiding by my decision that he is not one under the guidelines.  The issue is this.  The instant offense was not the worst of his conduct.  Although, I think there are some facts attending to it including what appears to

75

FA1AASMIS                    Sentence

have been a domestic violence incident that is quite bad.

I also don't think it is enough to say that Mr. Smith had bad luck with women as some of the letters submitted to me has suggested.  I do think he's had bad luck, some of it his own making.  But for me as I've struggled with this sentence and I have for a long time now, the career offender guideline was just too high.  It did not to me fairly and adequately capture all facets of Mr. Smith's persona, the loving family man that I don't dispute he is, the good things he's done for his family, the attention and the care he has provided to them and the effort that he has made from time to time to be, to live responsibly in society and to be a responsible parent. And so that's why as I said to the government and to the parties previously, were I to have found that the career offender guideline applied, I would have varied downward any way.  Similarly, I'm varying downward slightly from the figure that I did calculate because I still think that that number too does not fully capture all that is Mr. Smith, the good and the bad of him.

I also while recognizing the seriousness of the instant offense an while recognizing the seriousness of the criminal history, I'm also mindful of fact that his previously sentence was no where near this length.

What I will say, Mr. Smith, is that I'm whether you believe it or not giving you an enormous break at this

76

FA1AASMIS                     Sentence

sentencing.  And if it turns out that on supervised release you are found to have violated that trust that I have placed in you there will be repercussions.  So I do want you to learn and grow while in your prison and then to come out and be with your family.

I'm going to order that the term of imprisonment be followed and so -- excuse me -- let me get back to the term of imprisonment.

The statutory maximum for Count One is 120 months.  I believe the statutory maximum for Count Two is 240 months.  I will impose a concurrent sentences of 120 months on each of those counts.  I'm ordering that those terms be followed by a term of supervised release of three years on each count also to run concurrent.

Mr. Smith, as you've discussed with your counsel, there are various mandatory and standard conditions of supervised release.  They include such things as basic as you not committing another offense, you not possessing illegal controlled substances, you not possessing a firearm or a dangerous weapon, you refraining from the unlawful use of controlled substances and submitting to a drug test as appropriate.  Those will all be imposed.

There are also the special conditions that I discussed with your counsel and that he reviewed you with earlier in this proceeding that you participate in a program regarding testing

77

FA1AASMIS                    Sentence

and treatment for drugs and alcohol use, that you submit your

person, your property, your house, your vehicle, your computer

to a search by your supervising probation officer if there is a

basis to do so and that you be supervised in the district of

residence.

I will not impose a fine because there are no funds

that you have with which to pay a fine and I think if you had

money it should go to your children and not a fine.  I will not

imposing restitution.  I will impose forfeiture.  I'm required

to impose a mandatory special assessment of $200.  That's $100

on each count of conviction and I do that.

Mr. McKay, with that in mind, is there any legal

reason other than those already argued why I may not impose

this sentence?

MR. MCKAY:  No, your Honor.

THE COURT:  Mr. Habib, is there any legal reason why I

may not impose the sentence?

MR. HABIB:  I believe your Honor did not address the

5G1.3.

THE COURT:  Yes.  Thank you.  Recognizing that I have

the ability to under that provision to credit the time I'm

electing not to.  I understand that the policy statement which

is not authoritative to me suggests that I should run the terms

consecutively because I think that they are different instances

I believe incremental punishment is appropriate.

78
FA1AASMIS                    Sentence

I also, again, I have very varied downward considering a number factors and all of this including the adjustments that we discussed earlier to the guidelines and everything else in the case.  So this is for me the appropriate sentence for this case in light of all of the factors and all of the discussions we have been having.

But thank you for the clarification.  Mr. Habib, is there something else?

MR. HABIB:  No, only that your Honor recommend that Mr. Smith be detained as close to New York City as possible.

THE COURT:  Let me talk about recommendations once we're done.

MR. HABIB:  Other than that no objection.

THE COURT:  All right.  Thank you, sir.

Mr. Smith, please rise, sir.

Mr. Smith, after considering the factors set forth in Section 3553(A) of Title 18 of the U.S.C. I find that sentence of 120 months imprisonment is sufficient but no greater than necessary to comport with the purpose of sentencing.  It will be comprised of two terms of 120 months on each of Counts One and Two but they're running concurrently.  So the total term of imprisonment is 120 months.

I will order that term of imprisonment be followed by concurrent terms, three years of supervised release with the mandatory standard and special conditions that I've outlined.

79
FA1AASMIS                    Sentence

I will not order a fine or restitution and I will not order forfeiture but I must impose a mandatory special assessment of $200 and I will do that.

Thank you and please be seated.

Are there any open counts that need to be dismissed?

MR. MCKAY:  No, your Honor.

THE COURT:  I believe there was an underlying in indictment.  Am I mistaken?

MR. MCKAY:  I think, your Honor, that the indictment was changed for the jury but it was never formally superseded. I could be wrong on this.

THE COURT:  I don't see an underlying.  All right.  So there are no counts to dismiss.  I have now from the defense their recommendation for service of sentence.  Are there other recommendations you would like me to make?

MR. HABIB:  No, your Honor.

THE COURT:  Sir, not that I would ever tell you what to do.  Is your client a candidate for the RDAP program?

MR. HABIB:  He is a candidate for the program.  He may not be eligible to receive sentence credit because of the firearm aspect of the offense.

THE COURT:  All right.  I'll ask the question differently.  Would you like him to be recommended or is it not your wish?

(Pause)

80

FA1AASMIS                    Sentence

MR. HABIB:  Yes, if your Honor could so recommend.
Thank you.

THE COURT:  Thank you.  Is there something else, sir?

MR. HABIB:  No, your Honor.

THE COURT:  Mr. Smith, I want to let you know, sir, that you have a right to appeal from your conviction and from your sentence and if that's something that you are interested in I'd ask you please to speak to your counsel.  The reason I say that, sir, is there is a deadline with which one must file a notice of appeal from his or her conviction.  It is two weeks from the date of entry of a written judgment and it's my expectation that I will either enter the judgment today or tomorrow.  So if this is something that is of interest to you please speak with your counsel and they will advise you on what it is you need to do.  All right, sir?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Mr. McKay, is there anything else we should be discussing today, sir?

MR. MCKAY:  No, your Honor.

THE COURT:  Mr. Habib or Mr. Marvinny, anything else?

MR. HABIB:  No, your Honor.  Your Honor, with your Honor's indulgence may Mr. Smith have a few moments with his family?

THE COURT:  I will ask the marshals if that is something that is permitted?  And I will ask the marshals if he

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

81
FA1AASMIS                    Sentence

could just remain here for a few minutes given the medical conditions that I believe his mother to be suffering, if he could just have a few minutes with her?  I'll leave it their discretion but it's my hope that you can find a few minutes for him.

Anything else, sir?

MR. HABIB:  No, your Honor.

THE COURT:  Mr. Smith, sir, again, I understand this has been a long process for you.  It is my hope, sir, and you'll understand why I'm saying this that you and I not see each other again.  If you we do it is more likely than not because there have been problems with your transition to supervised release.  And instead it is my hope that you pass the time quickly, that your family continues to support you in the manner that they have, that you are reunited with them and that you continue to live a life that does not involve criminal activity.  So I do wish you well in that, sir.  Thank you.

Thank you, all.

(Adjourned)